**Randy Dale MAYO,**
**Petitioner–Appellant,**

v.

**James A. LYNAUGH, Director, Texas**
**Department of Corrections,**
**Respondent–Appellee.**

No. 89–1127.

United States Court of Appeals,
Fifth Circuit.

June 30, 1989.

Bradley C. Miles, San Angelo, Tex., (Court-appointed), for petitioner-appellant.

William C. Zapalac, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, KING and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A Texas state prisoner, sentenced to death by lethal injection, seeks habeas corpus relief, alleging three grounds of error in the guilt phase of his trial and two grounds of error in the sentencing phase. After reviewing the record, we find no violation of Mayo's constitutional rights and, therefore, affirm the judgment of the district court denying his writ.

## I.

On April 13, 1984, the body of Kimberly Sue Reeves was found next to a concrete support of a bridge crossing over Lake Nasworthy in Tom Green County, Texas. An autopsy established that Reeves had died as a result of a blow to her skull with a blunt instrument. She had also been stabbed in the neck and abdomen and raped.

Randy Dale Mayo was arrested that evening at a drive-in restaurant in San Angelo on an unrelated capital murder warrant from Lubbock County, Texas. After his arrest, Mayo orally confessed to the murder of Reeves and signed a written statement. Mayo then accompanied the police to the scene of the crime and led them to the jack stand used as the murder weapon. Upon his return to the police station, Mayo signed another written confession.

On January 28, 1985, a jury in the 51st Judicial District Court of Toms Green County, Texas, convicted Mayo of capital murder while in the course of committing an aggravated sexual assault. After a separate sentencing hearing, the jury returned affirmative answers to the special issues submitted pursuant to the Texas capital sentencing statute[1] and the court sentenced Mayo to death by lethal injection. On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and sentence.[2] Subsequently, the trial court

set Mayo's execution date for August 13, 1986.

On August 6, Mayo filed in the Texas trial court a motion for a stay of execution, a motion to recall the warrant of execution, and an application for a writ of habeas corpus. The motions were denied.

Two days before his scheduled execution, Mayo filed a motion for a stay of execution and for a writ of habeas corpus in the United States District Court for the Northern District of Texas, San Angelo Division. The court stayed the execution on August 11, 1986.

Two hearings were held before a United States Magistrate. Before the first hearing on November 18, 1986, Mayo personally moved to amend his petition to assert claims of ineffective assistance of counsel. The magistrate allowed Mayo's counsel, who had represented him at trial, on appeal, and in the habeas proceedings, to withdraw; he then continued the hearing, appointed new counsel to represent Mayo, and allowed Mayo to amend his petition. A second evidentiary hearing was held on April 13, 1987. On September 16, 1988, the magistrate issued a report and recommendation that the writ be denied.

After the state had waived its right to seek exhaustion in state court, the district court granted Mayo leave to file an amended petition asserting a claim, based on *Penry v. Lynaugh,*[3] that the Texas capital sentencing statute is unconstitutional. The court held a hearing to determine whether Mayo had additional evidence regarding mitigating circumstances. On February 1, 1989, the court rejected Mayo's challenge to the Texas capital sentencing statute, adopted the findings and conclusions of the magistrate, denied the writ of habeas corpus, and vacated the stay of execution.

The district court granted Mayo's certificate of probable cause to appeal and this appeal followed.

---

1. Tex.Crim.Proc.Code Ann. art. 37.071(b).

2. *Mayo v. State,* 708 S.W.2d 854 (Tex.Crim.App. 1986) (en banc).

3. 832 F.2d 915 (5th Cir.1987), *cert. granted in part,* —— U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988).

## II.

██ Mayo contends that the trial court violated his rights to due process and a trial by jury by failing to comply with state law in swearing the jury. First, he claims that the court erred in swearing the jurors individually, rather than collectively.[4] The district court properly characterized this claim as frivolous. We do not sit to review state law [5] and find no federal constitutional violation in the alleged error.

██ Second, Mayo asserts that the court failed to follow § 12.31(b) of the Texas Penal Code in not asking the jurors to state under oath that "the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact." [6] This provision, although available to both defendants and prosecutors, primarily allows prosecutors to eliminate for cause potential jurors whose scruples against capital punishment will affect their deliberation of fact issues.[7] In *Adams v. Texas*, the Supreme Court reversed a death sentence on the basis that striking jurors under section 12.31(b) violates the *Witherspoon* doctrine [8] because it permits the exclusion of jurors who would be "affected" by the possibility of the death penalty, but who nevertheless could still follow the court's instruction and obey their oaths.[9] If § 12.31 had been used to exclude jurors, Mayo would have a constitutional claim. Failure to use it gives rise to none.

## III.

Mayo contends that the oral confession and the two written confessions admitted at trial were obtained in violation of his Fifth Amendment right against self-incrim-

ination and his Sixth Amendment right to assistance of counsel because the statements were taken after Mayo told the police that he wanted a lawyer and after the police had promised leniency in exchange for his confession.

At an evidentiary hearing before the trial court on the admissibility of the confessions, the state called as witnesses five police officers involved in arresting, questioning, or detaining Mayo and the person Mayo called from jail. Mayo testified for himself and called as witnesses the police officer who drove him from the site of the arrest to the city jail, a relative, and a friend. The court made a written finding that the confessions were voluntary. Specifically, the court found that the defendant initiated the interview leading up to the confessions, the police gave the defendant *Miranda* warnings on three different occasions, the defendant was informed of his right to an attorney and expressly waived it, and the police officers did not promise the defendant leniency in exchange for his statements. These factual findings, if correct, are sufficient to defeat Mayo's claims that the confessions should be suppressed.[10]

██ State-court determinations of the ultimate question whether a confession is voluntary are not binding in a federal habeas corpus proceeding.[11] Subsidiary factual questions, however, are entitled to the presumption under 28 U.S.C. § 2254(d) that a state court's written determinations made after a hearing on the merits are correct.[12] The findings that Mayo initiated contact with the police and that the police did not promise leniency, determinations that in-

---

**4.** *See* Tex.Crim.Proc.Code Ann. art. 35.22.

**5.** *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982).

**6.** *See* Tex.Penal Code Ann. § 12.31(b).

**7.** *See Adams v. Texas,* 448 U.S. 38, 48–49, 100 S.Ct. 2521, 2528, 65 L.Ed.2d 581 (1980).

**8.** *See Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

**9.** *Adams,* 448 U.S. at 49, 100 S.Ct. at 2528.

**10.** *See Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981) (Fifth Amendment requires that defendant initiate communication with police once he invokes his right to counsel); *Patterson v. Illinois,* —— U.S. ——, 108 S.Ct. 2389, 2395, 101 L.Ed.2d 261 (1988) (waiver of Sixth Amendment right to counsel valid when *Miranda* warnings given).

**11.** *Miller v. Fenton,* 474 U.S. 104, 109, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985).

**12.** *See id.*

volve the credibility of witnesses and turn largely on an evaluation of demeanor, are subsidiary factual issues entitled to this presumption of correctness.[13] Furthermore, we agree with the district court that those findings are supported by the record. As Mayo offered nothing to establish that the factual determinations by the state court were erroneous, we find no error.

## IV.

▮ To prevail on his claim that his attorneys at trial and on appeal rendered ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, Mayo must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.[14] A "court deciding an actual ineffectiveness claim must judge the reasonableness of counsels' challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." [15] "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [16] The burden of proving either element is heavy as counsel is strongly presumed to have rendered adequate assistance and exercised reasonable professional judgment.[17]

Mayo's specific allegations are that counsel (1) failed to exercise peremptory challenges to jurors Gus Edwin Young and Harvey Leon Reeves, who Mayo alleges indicated that they would automatically impose a sentence of death if he were found guilty, (2) did not call Assistant District Attorney Tom McCoppin to testify concerning the alleged promise of leniency, and (3) did not raise on appeal the issue of the voluntariness of the confessions.

▮ Defense counsel objected to Reeves for cause after he answered affirmatively on voir dire the question whether in all capital murder cases the sentence should be the death penalty. Under further examination by the state, Reeves explained that he misunderstood counsel's question and that if the state failed its proof during the sentencing phase of the trial he would vote "no" on the special issues. The court overruled the challenge. Defense counsel further examined Reeves on the issue, then asked for a moment to consult. The record does not indicate with whom the attorney spoke, but afterwards he accepted Reeves. Defense counsel also objected to Young after he gave conflicting answers to the question whether he would automatically answer the special questions in the sentencing phase so that the defendant would get the death penalty. No ruling was ever made or demanded on the objection. After the state and the defense counsel further questioned Young, both accepted him.

We do not find counsels' conduct deficient. Because the trial court had rejected their challenges for cause, Mayo's attorneys were left with the tactical decision whether to exercise peremptory challenges to the two jurors. The jurors had stated that they had been confused by the initial questions and that they would vote "no" on the special questions if the prosecution did not carry its burden of proof. During the second hearing before the magistrate, Mayo's trial counsel testified that "with Mr. Young and Mr. Reeves we wanted them as jurors after it was clear that they didn't really mean what they said in answer to that first question [that they would automatically vote for death] ... we felt like by the response to the other answers that they would be good jurors." We fail to see how counsels' decision to believe that the venire members would be fair and impartial was unreasonable.

---

**13.** *Id.* at 117, 106 S.Ct. at 453.

**14.** *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2052, 2067, 80 L.Ed.2d 674 (1984).

**15.** *Id.* at 690, 104 S.Ct. at 2066.

**16.** *Id.* at 694, 104 S.Ct. at 2068.

**17.** *Kirkpatrick v. Butler,* 870 F.2d 276, 280 (5th Cir.1989).

■ Mayo also contends that counsel was deficient during the hearing to suppress the confessions in not calling Assistant District Attorney Tom McCoppin to testify concerning the alleged promise of leniency. "Complaints of uncalled witnesses are not favored in federal habeas review because allegations of what a witness would have testified are largely speculative."[18] Nothing in the record supports Mayo's contention that McCoppin would have testified that Detective Ward promised Mayo that in exchange for a murder confession, he would not be prosecuted for capital murder. Mayo presented no evidence on this claim at his hearings before the magistrate. Detective Ward and Officer Grosshans, who were present when Mayo gave his confessions, testified at the state court hearing that no deals had been made. McCoppin was a member of the team that prosecuted Mayo on the theory that he voluntarily confessed. Counsel could have reasonably assumed that McCoppin would not testify favorably to Mayo.

■ Mayo's final ineffective-assistance claim is that counsel should have raised on appeal the issue of the voluntariness of the confessions. Counsel is not required to urge on appeal every nonfrivolous ground that might be raised.[19] It is not only reasonable but effective for counsel on appeal to winnow out weaker arguments and focus on a few key issues.[20] Only Mayo's own testimony supported his contention that his confessions were given in violation of his rights. It was reasonable for counsel to assume that the appellate court would not find erroneous the trial court's factual determination, after a full hearing, that there was no coercion and no deal for leniency.

**V.**

■ Mayo contends that an unlawful communication between a juror and a witness during the sentencing phase of the trial violated the Texas Code of Criminal Procedure[21] and denied him his Sixth Amendment right to a fair and impartial jury. To the extent that Mayo asserts that the communication between the juror and a witness contravened state law, he fails to state a claim for relief in federal habeas corpus.[22] We therefore address only his Sixth Amendment claim.

■ On January 30, 1985, after testimony at the punishment phase of trial was concluded, the jury foreman, Dennis J. Potter, telephoned Raymond L. Allison, one of Mayo's witnesses at the punishment phase and an acquaintance of Potter's, to discuss Allison's testimony that Mayo's life should be spared. After the jury had returned its verdict on punishment, Mayo learned of this conversation and filed a motion for new trial alleging jury misconduct. The trial court, after an evidentiary hearing, denied relief. The state appeals court affirmed.

The federal district court found the determinations of the state trial and appeals court inadequate in their findings of fact and thus did not accord them the presumption of correctness given in federal habeas to written findings by a state court after a hearing on the merits.[23] As Mayo did not offer any additional evidence on the issue at his federal evidentiary hearings, the district court reviewed the record of the state hearing. Applying the standard we set out in *Miller v. Estelle*,[24] the court concluded that Mayo did not carry his burden of demonstrating that Potter's contact with Allison prejudiced the jury at the sentencing phase of his trial.

18. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987).

19. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983).

20. *See id.* at 751–52, 103 S.Ct. at 3313.

21. Tex.Crim.Pro.Code Ann. § 36.22.

22. *See* 28 U.S.C. § 2254(a).

23. 28 U.S.C. § 2254(d).

24. 677 F.2d 1080 (5th Cir.) (defendant bears burden of demonstrating harmfulness of third party contacts with the jury during sentencing phase of trial), *cert. denied*, 459 U.S. 1072, 103 S.Ct. 494, 74 L.Ed.2d 636 (1982).

We may set aside the district court's determination only if it is clearly erroneous.[25] The magistrate's report, which was adopted by the district court, extensively reviewed the testimony at the state evidentiary hearing. John Michael Anderson, a juror at Mayo's trial, testified for the state that there was no discussion during the jury deliberations of the telephone conversation between Potter and Allison and no reference to anything outside the record. Thus the only juror possibly influenced by the conversation was Potter himself. Potter testified that Allison's trial testimony caused him to reconsider his decision that there was nothing mitigating or redeeming about Mayo. Allison testified that he and Potter reviewed Allison's testimony in support of Mayo and that, in addition, Allison said he thought that Mayo's mother was "full of demons," which made her look old. Since this observation went beyond Allison's testimony at trial, the court considered its possible effect on Potter, although he did not remember the "demons" comment. The court concluded that because the comment could just as easily be construed as mitigating evidence of an unfortunate childhood or as aggravating evidence that he took after his mother, Mayo had not carried his burden in showing that this evidence prejudiced the jury. This conclusion is supported by the record and is not clearly erroneous.

## VI.

■ Mayo contends that the Texas capital sentencing statute violates the Eighth and Fourteenth Amendments because the jury was precluded from giving effect to all the mitigating evidence submitted during the sentencing phase of his trial. Mayo had not objected to the jury charge at trial. After the magistrate had issued his report, the court allowed Mayo to amend his habeas petition to assert a new claim based on the Supreme Court's decision in *Franklin v. Lynaugh*[26] and the granting of certiorari in *Penry v. Lynaugh*.[27] The district court held a hearing, after which "the Court, having reviewed the record and questioned the Petitioner personally, determined that the Petitioner is familiar with *Penry v. Lynaugh* and has no additional evidence regarding mitigating circumstances to offer." The court then denied relief on Mayo's *Franklin–Penry* claim.

Under Texas law, if a jury finds the defendant guilty of a capital offense, the trial court holds a separate sentencing proceeding at which a wide range of additional evidence in mitigation or aggravation is admissible. Pursuant to the Texas sentencing statute, the jury is required to answer the following questions based on evidence adduced during either phase of the trial:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit acts of violence that would constitute a continuing threat to society.[28]

The state has the burden of proving beyond a reasonable doubt that the questions should be answered affirmatively. If the jury so answers both the questions, as was done in Mayo's case, the trial judge must sentence the defendant to death.

■ Mayo contends that the Texas capital punishment scheme is unconstitutional because the jury is prevented from considering mitigating evidence except on the issues of the deliberateness of the murder and the probability of future dangerousness. We are bound by the precedents of this circuit that have upheld the constitu-

25. Fed.R.Civ.P. 52(a).

26. 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988).

27. 832 F.2d 915 (5th Cir.1987), *cert. granted in part*, —— U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988).

28. Tex.Crim.Pro.Code Ann. art. 37.071(b). The third statutory question concerning provocation

tionality of the Texas statute,[29] and therefore we must deny relief on this claim. That the Supreme Court has granted certiorari in a particular case does not allow us to grant relief to other petitioners who raise a similar claim.[30]

For the foregoing reasons, we deny habeas relief. The judgment of the district court is AFFIRMED.

---

is not relevant to this case.

**29.** *See, e.g., Graham v. Lynaugh,* 854 F.2d 715 (5th Cir.1988); *Williams v. Lynaugh,* 837 F.2d 1294, 1298 (5th Cir.1988) (per curiam).

**30.** *See Bell v. Lynaugh,* 858 F.2d 978, 984 (5th Cir.), *stay granted,* — U.S. ——, 109 S.Ct. 254, 102 L.Ed.2d 243 (1988); *Wicker v. McCotter,* 798 F.2d 155, 157–58 (5th Cir.1986).