Michael Don **MICHEAUX**, Petitioner–Appellant,

v.

James A. **COLLINS**, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.

No. 88-2756.

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1990.

**1084**

Ann E. Webb, Vinson & Elkins, Houston, Tex., for petitioner-appellant.

Michael Don Micheaux, Angleton, Tex., pro se.

Andrea L. March, S. Michael Bozarth, M.H. Montelongo, Asst. Attys. Gen., and Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before THORNBERRY, GEE, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Michael Micheaux (Micheaux) appeals the denial of habeas relief, contending that (1) his pleas of guilty were not entered into knowingly and voluntarily, because he was admonished incorrectly about the minimum sentence to which he was subject; and (2) he had ineffective assistance of counsel in that regard. Finding no error, we AFFIRM.

## I.

On June 10, 1980, Micheaux was indicted on three counts of aggravated robbery and two counts of attempted capital murder, arising out of a series of events on May 31, 1980.[1] The indictment alleged enhancement by a previous felony conviction for credit card abuse. In Texas state court, Micheaux pleaded (1) guilty to two counts of aggravated robbery and one count of attempted murder and (2) true to the enhancement. The remaining charges were dismissed.

At sentencing, the court informed Micheaux that the punishment for aggravated robbery was "not less than five years nor more than 99 years or life," and that it was within the court's discretion to sentence him to a term on each count within that range. The sentencing judge did not inform Micheaux of the sentencing range for attempted capital murder. Micheaux was sentenced to not less than five years nor more than 45 years for attempted capital murder and to not less than 15 years nor more than 45 years for each of the aggravated robberies, the sentences being concurrent.

Although the court advised Micheaux that the minimum sentence for each robbery was five years, it was actually 15 years because of the enhancement. Tex. Penal Code Ann. § 12.42(c) (Vernon 1974). Micheaux appealed his convictions, claiming that the trial court had improperly admonished him on the range of punishment. The Texas Court of Criminal Appeals affirmed his convictions for aggravated robbery but set aside his conviction for attempted capital murder, because the trial court had wholly failed to admonish Mi-

---

1. The United States Magistrate's Memorandum and Recommendation on habeas review briefly described the underlying, and extremely serious, events:

> On May 31, 1980, in downtown Houston, Texas, appellant Micheaux robbed Erich W. Wilde of his taxicab at gun point. The Houston police gave chase and Officer Incerta subsequently attempted to apprehend Micheaux. Micheaux resisted, grabbed Incerta's police revolver, and took Incerta's patrol car at gun point.

> Houston Police Officer D.B. Riggs received a call for help from Officer Incerta and set up a roadblock. Micheaux drove through the roadblock, exchanged several shots with Officer Riggs, and wrecked the patrol car. Micheaux then fired several shots at M.D. Wilson, a bystander, and took Wilson's truck. The Houston police again caught up with Micheaux, whereupon Micheaux wrecked Wilson's truck and was apprehended. Micheaux admitted these facts at the guilty plea hearing.

cheaux on the range of punishment for that offense.

Micheaux then exhausted his state habeas remedies, again attacking his conviction on the basis of the improper admonishment. Filed in support of his habeas application were affidavits by Micheaux and his trial counsel, Sam Adamo (Adamo). The State of Texas did not respond to Micheaux's application, and no hearing was held. On January 12, 1983, the state district court signed an eleven paragraph "Proposed Findings of Fact" submitted by Micheaux, which stated that he would not have pleaded guilty but for the incorrect admonishment. Pursuant to Texas Code of Criminal Procedure art. 11.07, the record for the denial of the habeas relief was forwarded to the Texas Court of Criminal Appeals. That court denied the relief without written opinion on March 9, 1983.

Micheaux next sought federal habeas, raising the improper admonishment. The district court denied the application without a hearing, finding that the record demonstrated Micheaux was not entitled to relief. Micheaux appealed to this court, and we reversed and remanded for an evidentiary hearing. *Micheaux v. Procunier,* 791 F.2d 930 (5th Cir.1986) (unpublished).

Prior to remand, Micheaux filed a second *pro se* habeas application, attacking the effectiveness of his trial counsel. Following remand, the district court consolidated the two applications and appointed counsel to represent Micheaux at the evidentiary hearing. Despite being ordered twice to amend the application to add the ineffective assistance claim, in order for that claim to be considered, Micheaux's counsel did not do so.

The evidentiary hearing was conducted before a federal magistrate; and testimony was received from Micheaux and his former trial counsel, Adamo. By a Memorandum and Recommendation on June 15, 1988, the magistrate recommended denial of relief, finding that the incorrect admon-

ishment could not have rendered Micheaux's pleas involuntary. Although the ineffective assistance issue was presented at the hearing, no findings were entered on it. Micheaux then moved to substitute appointed counsel, because, *inter alia,* his counsel had not filed objections to the recommendation. The district court construed that motion as such objections and adopted the recommendation and entered final judgment, dismissing the application, on July 26, 1988.[2]

## II.

Needless to say, our habeas review of state convictions is "confined to the very narrow standard of due process." *Trussell v. Estelle,* 699 F.2d 256, 259 (5th Cir.), *cert. denied,* 464 U.S. 853, 104 S.Ct. 168, 78 L.Ed.2d 153 (1983). Before a federal court may overturn a state conviction, it must find an error that is so fundamentally unfair as to violate due process. Our review therefore is limited only to the extent that federal constitutional issues arise. 28 U.S.C. § 2254(a); *see Smith v. McCotter,* 786 F.2d 697, 700 (5th Cir.1986).

For our habeas review, the district court's findings of fact must be accepted unless they are clearly erroneous. Fed.R. Civ.P. 52(a). Of course, questions of law are freely reviewable. *Humphrey v. Lynaugh,* 861 F.2d 875, 876 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1755, 104 L.Ed.2d 191 (1989).

## A.

The first issue to be addressed is whether Micheaux's guilty pleas were voluntary, notwithstanding the erroneous admonishment about the minimum length of sentence. In reviewing a denial of habeas relief concerning the voluntariness of a plea, we must determine whether the "guilty plea ... was voluntarily entered by a defendant who understood the nature of the charges and consequences of the plea...." *Hobbs v. Blackburn,* 752 F.2d

---

**2.** On November 4, 1988, the district court denied Micheaux the requisite certificate of probable cause for an appeal. This court granted it on June 16, 1989. After briefs were filed by

Micheaux, *pro se,* and the state, counsel was appointed for Micheaux; and additional briefs were filed.

1079, 1081 (5th Cir.), *cert. denied,* 474 U.S. 838, 106 S.Ct. 117, 88 L.Ed.2d 95 (1985).

### 1.

In this instance, we must determine first whether the district court accorded the state court findings of fact the appropriate deference pursuant to 28 U.S.C. § 2254(d).[3] This applies equally to the ineffective assistance of counsel claim.

The record is clear that the judge misinformed Micheaux about the minimum sentence he could receive for the aggravated robberies. Micheaux was admonished that the minimum sentence was five years; with the felony enhancement, it was actually 15. In support of his state habeas application, Micheaux averred that if he had known the minimum was 15, not five, years, he would have insisted on a jury trial. The affidavit of his trial attorney, Adamo, stated that Micheaux had indicated to him that he was hopeful of receiving the most lenient sentence possible and that he had no independent recollection of discussing the minimum punishment with Micheaux.

The state habeas trial court adopted verbatim Micheaux's unopposed proposed findings of fact, which included the following:

> 5. The only admonishment that petitioner was given concerning the applicable range of punishment for the enhanced offense of aggravated robbery was at the time of the guilty pleas.... Neither Mr. Adamo nor the prosecutor corrected the court, nor did they otherwise advise petitioner that the minimum punishment that he could receive for the enhanced offense was 15 years in prison.
>
> \*    \*    \*    \*    \*    \*
>
> 7. Petitioner decided to enter guilty pleas in the hope that he would receive as lenient a sentence as legally possible.

> 8. Petitioner entered guilty pleas in the mistaken belief that he could receive as little as five years in prison, when in fact the least that he could receive was 15 years in prison.
>
> 9. Petitioner was misled by the improper admonishment on the range of punishment at the time that he entered the guilty pleas.
>
> 10. Had petitioner known that the least that he could receive was 15 years in prison, he would not have waived his right to trial by jury and entered pleas of guilty, but would have exercised said right to trial by jury.
>
> 11. Petitioner relied upon the court's admonishment as to the minimum range of punishment, as he had a right to do, in entering the guilty pleas. Petitioner also relied upon the court's representation to him at the time of the pleas that the court would consider the entire range of punishment, including the minimum of five years, in determining what the proper punishment could be. However, the court could not lawfully consider a punishment of less than 15 years in prison.

Obviously, the Texas habeas appellate court did not find these findings controlling, because it dismissed Micheaux's application without opinion.

On remand, the district court noted (1) that it was required to give a presumption of correctness to all findings of fact from the state habeas proceeding, 28 U.S.C. § 2254(d); (2) that this presumption existed, even though the Texas Court of Criminal Appeals refused to be bound by those findings, *citing Craker v. Procunier,* 756 F.2d 1212, 1213 (5th Cir.1985), *aff'd following remand, Craker v. McCotter,* 805 F.2d 538 (1986); and (3) that mixed questions of law and fact were not entitled to the same § 2254(d) presumption.[4]

---

**3.** 28 U.S.C. § 2254(d) provides in pertinent part that "[i]n any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written

opinion, or other reliable and adequate written indicia, shall be presumed to be correct...."

**4.** § 2254(d) contains eight exceptions to the presumption of correctness. Exception eight is arguably applicable here. It states that the presumption applies "unless that part of the record of the State court proceeding in which the determination of the sufficiency of the evidence to support such factual determination, is produced

The district court concluded that "[t]here is no question that the first six findings of fact of the state trial judge were findings of 'basic, primary, or historical facts: facts "in the sense of a recital of external events and the credibility of their narrator." ' " (citation omitted). The more troublesome question for the court was whether the remaining findings "regarding the petitioner's state of mind, motivation for his guilty plea, and conclusions regarding the degree of petitioner's reliance on the punishment admonition [were] 'issues of fact.' " The court concluded that although these findings (numbers 7–11), "border[ed] on legal assessments regarding the voluntariness of the guilty plea," they were findings of fact "entitled to the stringent presumption of correctness under 28 U.S.C. § 2254(d)...." This notwithstanding, and after a review of Micheaux and Adamo's testimony at the remand hearing, the district court held that the pleas were voluntary, a holding directly at odds with certain of the state findings it accorded the presumption of correctness.[5]

We disagree with the district court's conclusion that all of the state court findings were § 2254(d) findings of fact, rather than mixed findings of law and fact. Instead, we view those state findings directly touching on the voluntariness of the plea, such as "[h]ad petitioner known that the least that he could receive was 15 years in prison, he would not have waived his right to trial by jury and entered pleas of guilty, but would have exercised said right to trial by jury," as mixed questions of law and fact and therefore not subject to the stringent presumption of correctness. *See Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980).

In determining whether the plea was voluntary, the district court noted correctly that this "is a legal question, requiring independent federal determination," citing *Marshall v. Lonberger,* 459 U.S. 422, 431, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983) (citation omitted), where the Supreme Court stated that

> the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law ... and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d).

The Supreme Court held there that not all state court findings, but only "questions of historical fact ...—what the [state court] records show with respect to [a petitioner's] guilty plea, what other inferences regarding those historical facts the [district court] could properly draw, and related questions—are ... questions of 'fact' governed by the provisions of § 2245(d)." *Id.* *See also Norris v. Wainwright,* 588 F.2d 130, 134 (5th Cir.), *cert. denied,* 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979); *Lee v. Hopper,* 499 F.2d 456, 462 (5th Cir.), *cert. denied,* 419 U.S. 1053, 95 S.Ct. 633, 42 L.Ed.2d 650 (1974) (citations omitted) ("[s]ince the issues of effective assistance and voluntariness present mixed questions of law and fact, and since such questions do not fall within section 2254(d)'s presumption of correctness, the district court was under no constraint to defer to the state conclusions").[6]

Accordingly, the state court's findings of "historical" facts, such as "[n]either Mr. Adamo nor the prosecutor corrected the court, nor did they otherwise advise petitioner that the minimum punishment that he could receive for the enhanced offense

---

as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole *concludes that such factual determination is not fairly supported by the record.*" (Emphasis added). We need not decide whether that exception applies here. *See* note 7.

**5.** In essence, it appears that the procedure authorized by § 2254(d)(8) was utilized. *See* notes 4 and 7.

**6.** *See also Lavernia v. Lynaugh,* 845 F.2d 493, 500 (5th Cir.1988) ("the underlying determinations of historical fact that must be made in order to answer ... mixed question[s] are properly accorded a presumption of correctness"); *Uresti v. Lynaugh,* 821 F.2d 1099, 1101 (5th Cir.1987) ("[t]he state court's determination that the plea was voluntary for constitutional purposes ... is a question of federal law and is not a fact question subject to the requirements of 28 U.S.C. § 2254(d)").

was 15 years in prison," are entitled to the presumption of correctness and were accorded proper deference by the district court. However, the "findings" on the ultimate issue—whether Micheaux's guilty pleas were entered knowingly and voluntarily, his unopposed and adopted findings notwithstanding—are not findings of "historical" fact entitled to that same deference.

The earlier quoted state court findings numbers 7 through 11 are a far cry from "historical" facts. They do not state or summarize either facts presented in the sentencing court or actual events that transpired there during that process. Nor are they inferences that would have been reasonably drawn from those historical facts. Instead, in the perfect hindsight that we should, and must, be so wary of, they concern what Micheaux purportedly would, or would not, have done; whom, or what, he relied on; and how he was misled: all items being known, of course, only to Micheaux, as stated in his unopposed findings drafted approximately two and one-half years after the sentencing hearing. In so holding, we are not following the course we disclaim expressly in notes 4 and 7; we are not substituting our judgment on factual issues for that of the state habeas court pursuant to § 2254(d)(8). It is not necessary for us to do so, because we accord the presumption of correctness only to those facts entitled to it. The findings in numbers 7–11 do

not fall within that sphere of facts sheltered by § 2254(d); a shelter that reflects the respect and comity of federal, for state, courts, especially in an area as friction producing as that of a federal habeas proceeding involving a state prisoner.[7]

Therefore, the district court properly (1) accorded the deference due the state court findings of "historical" facts but (2) made an independent evaluation of the ultimate federal due process question: whether the pleas were voluntary.

### 2.

■ Having cleared the presumption of correctness hurdle, we can reach the district court's holding that Micheaux's pleas were voluntary. The magistrate summarized Adamo's remand hearing testimony as follows:

> Mr. Adamo testified that petitioner definitely did not want a jury trial, he had no available defense, he understood the seriousness of the facts and accusations against him, and *petitioner knew that there was a substantial likelihood that he could be sentenced to life imprisonment were he to be convicted on all charges pending against him.* Moreover, petitioner had delayed his court appearance as long as possible to forestall trial and sentencing. (Emphasis added.)[8]

The magistrate then summarized Micheaux's testimony:

7. In *Smith v. Black*, 904 F.2d 950, 961 (5th Cir.1990), this court noted that, as here, the case "present[ed] the rather unusual circumstance of the petitioner arguing for federal deference to the state court fact-finding … while the state would support the district court's re-reading of the record." The court in *Smith* noted in dicta that "there are situations when it is appropriate for a federal court to substitute its judgment on factual issues for that of the state court, even on habeas corpus review." *Id.* Although we need not decide whether this is such a case, it is questionable whether the presumption should be applied here, *see* note 4 *supra:* (1) the state did not submit any opposition to Micheaux's application; (2) the state district court did not hold a hearing; (3) the state district court did not make an independent assessment of the claim, but merely signed Micheaux's proposed findings of fact and did not even strike the word "proposed" before signing; and (4) the Court of

Criminal Appeals denied the application without written order, therefore implicitly rejecting the findings. *See, e.g., Marshall v. Lonberger*, 459 U.S. at 432–33, 103 S.Ct. at 849–50.

8. Adamo also testified that the prosecutor had recommended 40 years during the plea bargain process. Adamo stated that Micheaux "was not happy with forty years. And he wanted to do something to try to get less years." Furthermore, "[w]e never considered the fifteen year minimum. Frankly we were hopeful, and it was Mr. Micheaux's desire that he could beat the forty years or at least get less than forty years from the judge on the assessment of punishment. And that's why he didn't … want to go with the plea bargain." At the very least, pursuant to knowing the state would not agree to less than a 40 year plea, Micheaux was well aware of how the state viewed the serious-ness of the charges.

By contrast, petitioner testified that he was always willing and would have gone to trial if he had been correctly informed that the minimum available sentence was 15 years in jail. It was always foremost in petitioner's mind that he might get the minimum possible sentence which he understood to be five years in jail as a consequence of the incorrect admonition of the trial judge.

The magistrate noted that neither Micheaux or Adamo could specifically recall whether Adamo informed Micheaux of the minimum sentence, although Adamo did testify that it was his general practice to do so. The magistrate concluded that Micheaux's pleas of guilty were knowing and voluntary.

In doing so, the magistrate found that "the choices facing petitioner at the time of his guilty plea were limited" and that he had no defense to "overwhelming eyewitness testimony regarding a crime spree." The magistrate credited Adamo's testimony that Micheaux never intended to go to trial, and found that "[g]iven all the evidence, petitioner could not have reasonably expected to receive less than fifteen years for the numerous, aggravated offenses charged against him."

In order to rise to a due process violation actionable in a collateral attack upon a conviction, an error made during the guilty plea proceedings must make the plea unknowing or involuntary. *Boykin v. Alabama*, 395 U.S. 238, 242–43 & n. 5, 89 S.Ct. 1709, 1711–12 & n. 5, 23 L.Ed.2d 274 (1969). We have held that "[o]n federal habeas review, it suffices if a defendant is informed of the maximum term of imprisonment." *Hobbs v. Blackburn*, 752 F.2d at 1082; *see also Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir.), *cert. denied*, 459 U.S. 867, 103 S.Ct. 149, 74 L.Ed.2d 125 (1982) ("[t]he consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine of the offense charged").

On the other hand, we held in *Rogers v. Maggio*, 714 F.2d 35, 38 n. 5 (5th Cir.1983), that "appellant's claims that his guilty plea is a nullity ... because the court did not advise him of the minimum sentence, do not show that the guilty plea was unknowing or involuntary." But in *Rogers*, there was a complete failure to advise on the minimum sentence, unlike here, where Micheaux was given incorrect information about the minimum.

The prior panel, in remanding, held correctly that the test for whether the incorrect sentence advice, or admonishment, violated due process turns not on whether a minimum or maximum range is in issue; it is plainly, and simply, whether the admonishment precluded the plea from being knowing and voluntary. The panel held:

> It is difficult for us to discern any good reason for making a rigid, categorical distinction, for purposes of determining the validity of a guilty plea on collateral attack, between misadvice as to the mandatory minimum sentence and misadvice as to the maximum possible sentence. We believe that in either event such misadvice may be grounds for invalidating the plea. But that result does not invariably follow, nor does a showing of such misadvice necessarily entitle the habeas petitioner to an evidentiary hearing. *There must be reason to believe that the misadvice influenced the decision to plead guilty, or resulted in some other ascertainable prejudice.*

*Micheaux*, No. 85–2430 at 6 (emphasis added).

In remanding, the prior panel referred to *Hill v. Estelle*, 653 F.2d 202 (5th Cir. Unit A), *cert. denied*, 454 U.S. 1036, 102 S.Ct. 577, 70 L.Ed.2d 481 (1981), as authority for nullifying a plea in some circumstances where the defendant has been misinformed about the parameters of his sentence. In *Hill*, the petitioner claimed that the trial judge admonished him incorrectly on the punishment range. The court held that "[t]o rise to the level of a federal due process violation, the state trial judge's incorrect admonishment must somehow affect the knowing and voluntary character of the plea." *Id.* at 205.

Hill was told that the minimum sentence was five years when it was actually two. He pleaded guilty under a plea bargain in

which the prosecutor recommended a five to 25 year sentence, which was imposed. The court held that while Hill may have been erroneously admonished, he was not prejudiced thereby; that there was "no basis on which to conclude that the difference between the two possible ranges of punishment would reasonably have had an effect on Hill's decision to plead guilty." *Id.* at 206. In short, the voluntary character of Hill's plea was not altered by the incorrect admonishment.

Likewise, in *United States v. Fuller*, 769 F.2d 1095 (5th Cir.1985), the court sustained the dismissal without an evidentiary hearing of Fuller's habeas application claiming that his prior guilty plea had been induced by the trial court's erroneous advice that the maximum possible sentence was 15 years, when it was only five. Fuller was sentenced to six years, later reduced to five under Fed.R.Crim.P. 35. We held that the erroneous advice would not entitle Fuller to relief "unless the facts demonstrate that the error was likely to have altered the defendant's decision to plead guilty." *Id.* at 1098. The court noted the overwhelming evidence of Fuller's guilt, his many prior offenses, and the lack of any plea bargain and held there was no likelihood that Fuller would not have pleaded guilty.

Other circuits have applied similar reasoning in reviewing an incorrect minimum sentence admonishment. *See Bryant v. Cherry*, 687 F.2d 48, 50 (4th Cir.), *cert. denied*, 459 U.S. 1073, 103 S.Ct. 497, 74 L.Ed.2d 637 (1982) (failure to advise of the mandatory minimum seven-year sentence does not affect guilty plea made with the understanding that the prosecution would recommend life sentence, because ignorance of minimum sentence "could not have reasonably affected" decision to plead guilty); *Serrano v. United States*, 442 F.2d 923, 925 (2d Cir.), *cert. denied*, 404 U.S. 844, 92 S.Ct. 145, 30 L.Ed.2d 80 (1971) (failure to advise of minimum five-year sentence where the guilty plea was entered on understanding that prosecutor would recommend seven years does not warrant habeas relief or evidentiary hearing, because

ignorance of minimum sentence "could not have affected his decision to plead guilty").

The prior panel held that an evidentiary hearing was warranted; and on remand, following the hearing at which both Micheaux and his trial counsel testified, the district court found that despite the incorrect admonishment, Micheaux would still have pleaded guilty. The district court credited the testimony of Adamo, when he stated that Micheaux did not want to go to trial. Furthermore, there was substantial evidence of Micheaux's guilt; and he received a sentence less than the court could have imposed. The district court held correctly that Micheaux's pleas were knowing and voluntary.

**B.**

■ The district court did not make findings on Micheaux's ineffective assistance of counsel claim. And, the state contends that the issue was waived by Micheaux's counsel not pursuing it in district court, despite two orders to amend Micheaux's application on this issue in order for it to be considered. However, the issue was discussed at the evidentiary hearing. Because the claim was raised in the district court, both in Micheaux's original *pro se* application and at the hearing, and especially because it is so intertwined with the involuntary plea claim, we will address it, rather than remand for findings. Likewise, as noted earlier, equally applicable is our holding concerning which state court findings must be accorded the presumption of correctness.

The well known test for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): the defendant must show (1) that counsel's performance was deficient; and (2) that such performance prejudiced the defense. In reviewing a claim of ineffective assistance, "[b]ecause both the deficiency and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact, we must make an independent determination of whether counsel's representation satisfied the Sixth Amendment." *Martin v. McCotter*, 796

F.2d 813, 817 (5th Cir.1986), *cert. denied,* 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987); *Bell v. Watkins,* 692 F.2d 999, 1008 (5th Cir.1982), *cert. denied sub nom. Bell v. Thigpen,* 464 U.S. 843, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983).

Because both factors must be satisfied, an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance. *Strickland,* 466 U.S. at 689–94, 104 S.Ct. at 2065–68. And to show prejudice, "[t]he defendant must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068 (emphasis added). Accordingly, Micheaux must show that his attorney's failure to either properly advise him, or correct the trial judge's incorrect admonishment, concerning the minimum range of sentence would have resulted in a different outcome.[9]

In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Court held that the *Strickland* test is applicable to ineffective assistance claims arising out of the plea process. *See also Uresti,* 821 F.2d at 1101. In *Hill,* the petitioner complained that his plea was involuntary because his attorney supplied him with incorrect information about parole eligibility. The Court held that under the prejudice prong, the defendant must show that there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have instead insisted on trial. The Court found that the petitioner had not made sufficient allegations to satisfy the prejudice requirement.

Micheaux did allege that if he had known about the higher minimum sentence he would not have pleaded guilty and would have gone to trial. *See Hill,* 474 U.S. at 60, 106 S.Ct. at 371; *Uresti,* 821 F.2d at 1101. However, the district court, after a detailed evaluation of the evidence and the credibility of the witnesses, concluded that in all likelihood, Micheaux would have pleaded guilty to the charges even if properly informed of the correct minimum sentence.

In *Fuller,* as discussed earlier, the petitioner complained that the erroneous advice concerning his maximum sentence given by his trial counsel rose to the level of ineffective assistance. As here, the record was essentially silent concerning the lawyer's advice to Fuller; but it did show that counsel failed to correct the trial judge when he misstated the maximum sentence. In discussing this contention, the court stated:

---

**9.** Included in Micheaux's original *pro se* application charging ineffective assistance was the contention that his lawyer failed to investigate the adequacy of the information used to enhance his sentencing parameters and incorrectly advised Micheaux to plead true to the enhancement paragraphs in the indictment. Micheaux had instituted a grievance procedure against Adamo in 1981 on that claim.

As discussed, when the applications were consolidated on remand, Micheaux's counsel did not amend to include the ineffective assistance of counsel claim, including this sub-issue, despite being ordered twice to do so in order for the claim to be considered. The enhancement sub-issue was not satisfactorily raised, but was broached, at the evidentiary hearing; nor, as with the remainder of the ineffective assistance of counsel claim, were any findings rendered on it.

After the district court's memorandum and recommendation and judgment of dismissal were issued, Micheaux filed another habeas application in state court on January 31, 1989, alleging that his credit card conviction (later used for enhancement) was based on a defective information. In response to Micheaux's claim, the state habeas court entered findings, concluded that the information was sufficient under Texas law and recommended that relief be denied without a hearing. *Ex Parte Micheaux,* No. C–2–1478–8748–B (Crim.Dist.Ct. February 22, 1989). The state appellate court denied the application, "on the findings of the trial court without a hearing." *Ex Parte Micheaux,* No. 10,962–05 (Tex.Crim.App. April 19, 1989). As part of its response to the enhancement sub-issue on appeal here, the state was granted leave to supplement the record with the record from the above discussed state habeas proceedings concerning the credit card application. We accept the trial and appellate courts' factual determination.

But, in any event, this claim is subsumed within the ineffective assistance issue and is covered by our holdings on that issue and the issue of whether Micheaux's pleas were voluntary.

Erroneous advice from counsel or the court that the maximum sentence was greater than allowed by the statute does not necessarily prejudice a defendant unless the facts demonstrate that the error was likely to have altered the defendant's decision to plead guilty. Under some circumstances, the actual penalty may itself be so formidable or the overstatement so small that it is improbable the error would have had any effect. 769 F.2d at 1098. The court further noted that "whether the defendant might have decided to plead differently cannot be determined by measuring the degree to which the penalty was overstated. That decision must be based on consideration of all the facts confronting the defendant." *Id.* The court noted the substantial evidence of Fuller's guilt and his prior convictions and concluded:

> During his plea proceedings, Fuller swore that no one had coerced him and that no one had made any promises or representations that he could receive a lighter sentence in return for his plea. Even now he makes no such claims. He pleaded guilty in the expectation of possible consequences graver than those he actually faced. Under these circumstances, proof of Fuller's allegations could not suffice to prove that the errors of his attorney undermined the fairness of the proceedings, or would have led to a different outcome.

*Id.* at 1099. *See also Hill v. Estelle,* 653 F.2d at 206 (despite incorrect admonishment by the trial judge and counsel's failure to advise him on the possible range of punishment, "there is no basis in this case for holding that any misinformation, because of the difference between possible punishment ranges, would have had any effect on Hill's plea of guilty. Therefore, this ineffective assistance claim is also not cognizable on federal habeas corpus review").

Applying the *Fuller* analysis, we find that any failure by Micheaux's counsel to either advise him properly or correct the trial judge would not have affected Micheaux's decision to plead guilty. As stated, because the claim of ineffective assistance is so intertwined with the voluntariness of the guilty plea, the district court's conclusions on the latter are equally applicable to the former. We agree that Micheaux had "no defense to overwhelming eyewitness testimony regarding a crime spree ... [Micheaux] had little choice but to plead guilty and hope for leniency from the trial court. Confronting four offenses which carried maximum punishments of 29 years to life each and other pending felonies, petitioner's maximum exposure to prison was substantial." Under these circumstances, we hold that Micheaux has failed to prove the requisite prejudice resulting from any misadvice to him, or lack of advice to the sentencing judge, by his counsel concerning the minimum range of sentence.

### III.

The district court's dismissal of the application is

AFFIRMED.

THORNBERRY, Circuit Judge, specially concurring:

While I concur in the majority's decision to deny habeas relief, I do so with a different reasoning process to reach that conclusion. As the majority indicates, the state court's findings are not very credible, but I would not avoid them by labeling them mixed questions of fact and law.

At his state habeas corpus proceeding, Micheaux submitted affidavits containing proposed findings of fact. The state did not challenge these affidavits, and the judge signed them as the court's findings of fact. The judge did not even cross out the word "proposed" on Micheaux's affidavits.

The controversy in this case focuses on four of the state judge's findings:

> 7. Petitioner entered guilty pleas in the mistaken belief that he could receive as little as five years in prison, when in fact the least that he could receive was 15 years in prison.

8. Petitioner was misled by the improper admonishment on the range of punishment at the time he entered the guilty pleas.

9. Had petitioner known that the least he could receive was 15 years in prison, he would not have waived his right to trial by jury and entered pleas of guilty, but would have exercised said right to trial by jury.

10. Petitioner relied upon the court's admonishment as to the minimum range of punishment, as he had a right to do, in entering the guilty pleas. Petitioner also relied upon the court's representation to him at the time of the pleas that the court would consider the entire range of punishment, including the minimum of five years, in determining what the proper punishment would be. However, the court could not lawfully consider a punishment of less than fifteen years.

The federal district court treated these findings as "findings of fact entitled to the stringent presumption of correctness under 28 U.S.C. § 2254(d)," but concluded "that petitioner would not have gone to trial even if properly admonished." In other words, even assuming that Micheaux would not have pled guilty had he known the actual range of his potential sentence, his guilty plea was still voluntary.

## I. VOLUNTARINESS OF MICHEAUX'S GUILTY PLEA

If the statements quoted above are findings of fact, both this Court and the district court must presume those findings to be true unless the state court did not conduct a sufficient hearing or unless one of the statutory exceptions applies. *See* 28 U.S.C.A. § 2254(d) (West 1973). The district court's holding contradicts the state court's findings and, therefore, the holding is wrong if the presumption of section 2254(d) is applied. *See ante* at 1087.

I too am reluctant to give a presumption of correctness to unopposed affidavits stating what Micheaux would have done had he been properly admonished. However, this Circuit repeatedly has held that a finding of fact by a state court based solely on affidavits or on the record is entitled to the

section 2254(d) presumption. *See Buxton v. Lynaugh*, 879 F.2d 140, 144 (5th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990); *Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir. 1987); *Craker v. Procunier*, 756 F.2d 1212, 1214 (5th Cir.1985); *Smith v. Estelle*, 711 F.2d 677, 681–82 (5th Cir.1983), *cert. denied sub nom. Smith v. McKaskle*, 466 U.S. 906, 104 S.Ct. 1685, 80 L.Ed.2d 159 (1984). The majority correctly points out that even "the Texas habeas appellate court did not find these findings controlling, because it dismissed Micheaux's application without opinion." *See ante* at 1086. But the unwillingness of a state appellate court to recognize a trial court's findings does not diminish the significance that a federal court must give to them. *See Craker*, 756 F.2d at 1213 (holding that district court did not err in giving section 2254(d) presumption to Texas trial court's findings even though these findings were rejected by the Texas Court of Criminal Appeals).

To avoid the section 2254(d) presumption, the majority holds that the state court's findings go to the ultimate issue of voluntariness and, therefore, are not findings of fact at all but instead are mixed questions of fact and law. "Having cleared the presumption of correctness hurdle," the majority disregards the affidavits completely and has no problem finding that Micheaux's plea was voluntary under traditional constitutional analysis. *See ante* at 1088–1090.

The Supreme Court has never established a clear rule to determine when the section 2254(d) presumption applies. *Miller v. Fenton*, 474 U.S. 104, 113, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985). Therefore, the only way to decide whether a state's finding is entitled to the presumption is to compare that finding with those of prior cases.

To support its classification, the majority relies on *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). In *Marshall*, the respondent was indicted by an Ohio grand jury for murder. To obtain the death penalty against the respondent, the indictment alleged that the

respondent previously had pled guilty to another violent crime in Illinois.[1] *See id.* at 425–26, 103 S.Ct. at 846–47. Before admitting the indictment into evidence, the Ohio trial court conducted a hearing to determine whether the guilty plea to the Illinois charge had been voluntary. *Id.* at 428, 103 S.Ct. at 847–48. At the conclusion of the hearing, the court found "that the defendant [was] an intelligent individual, well experienced in the criminal process and well represented at all stages of the proceedings by competent and capable counsel in Illinois," and, therefore, that the plea was voluntary. *Id.* at 428–29, 103 S.Ct. at 847–48. Notwithstanding this result, the Sixth Circuit granted the habeas petition. *See id.* at 430, 103 S.Ct. at 848–49.

The Supreme Court reversed. The Court held that "the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution" is not a factual question, *see* 459 U.S. at 431, 103 S.Ct. at 849, but that any questions of historical fact determined by the state court are entitled to the presumption and must be used in analyzing the validity of the guilty plea under the federal standard, *see id.* at 431–32, 103 S.Ct. at 849–50. The Court determined that the Ohio court's assessment of the Illinois guilty plea was a factual finding, entitled to a presumption of correctness, and that the conclusion that the respondent's Illinois plea had been voluntary was an inference "fairly deducible from" this finding. *Id.* at 435, 103 S.Ct. at 851. *See also Hawkins v. Lynaugh,* 844 F.2d 1132, 1137 (5th Cir.), *cert. denied,* 488 U.S. 900, 109 S.Ct. 247, 102 L.Ed.2d 236 (1988).

The governing constitutional standard is analogous to a federal mathematical formula. The state court supplies all of the data, and the federal court applies the federal formula to determine whether the guilty plea was voluntary. The federal court has no power to alter the state data. *See* Robbins, *Whither (or Wither) Habeas Corpus?: Observations on the Supreme Court's 1985 Term,* 111 F.R.D. 265, 272

(1986) (noting that "the Court has held the following questions to be ones of fact only—to which the presumption does apply: voluntariness of a guilty plea"). In other words, there is a distinction between disputing the facts in Micheaux's affidavit and disputing the constitutional significance of those facts. *See Sumner v. Mata,* 449 U.S. 539, 556–57, 101 S.Ct. 764, 773–74, 66 L.Ed.2d 722 (1981) (Brennan, J., dissenting).

The state court found that Micheaux would not have pled guilty had he known the actual range of his sentence. The majority does not apply the constitutional standard to this finding but instead uses an acid test and concludes that we can disregard this finding because it "directly touches on the voluntariness of the plea." *Ante* at 1087. But "an issue does not lose its factual character merely because its resolution is dispositive of the ultimate constitutional question." *Miller,* 474 U.S. at 113, 106 S.Ct. at 451. The majority also notes that this finding is a mixed question of fact and law because it concerns Micheaux's state of mind. *Ante* at 1088. But a finding of an individual's mental state is entitled to the same deference as any other factual finding. *See Miller,* 474 U.S. at 113, 106 S.Ct. at 451; *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (finding as to juror impartiality presumed correct); *Rushen v. Spain,* 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (holding that "[t]he substance of the *ex parte* communications and their effect on juror impartiality are questions of historical fact entitled to this presumption"); *Mayo v. Lynaugh,* 882 F.2d 134, 137–38 (1989) (holding that determinations of the credibility of witnesses and evaluations of demeanor are entitled to the presumption of correctness), *opinion revised on other grounds on reh'g,* 893 F.2d 683 (5th Cir.1990).

By contrast, when considering a habeas petition, a federal court does not owe the same deference to a state's findings regarding the voluntariness of a defendant's

---

1. The use of the prior conviction to obtain the death penalty is similar to the enhancement paragraph used to increase Micheaux's minimum sentence from five to fifteen years.

confessions as it does to findings regarding the voluntariness of a guilty plea. *See Miller*, 474 U.S. at 113 & 117, 106 S.Ct. at 451 & 453 (contrasting the deference to state findings required by *Marshall* with the level of independent federal determination that is permissible in confession cases); *id.* at 118, 106 S.Ct. at 453–54 (Rehnquist, J., dissenting). In evaluating the voluntariness of a defendant's confession, a federal court is not limited to applying the "governing standard" of constitutional law, but it may also consider the totality of the circumstances surrounding the confession. *See id.* at 110, 106 S.Ct. at 449–50. An acid test is appropriate in confession cases; certain datum supplied by the state can be inherently flawed, from a constitutional perspective.[2]

Therefore, the state's determination that Micheaux was misled and that he would have gone to trial had he known the actual minimum range of his sentence was a finding of fact, not a mixed question of fact and law. This is consistent not only with *Marshall* but also with prior examples of findings that this Circuit has classified as factual. *E.g., Loyd v. Smith*, 899 F.2d 1416, 1424–25 (5th Cir.1990) (finding that defendant's counsel was deficient); *Kelly v. Lynaugh*, 862 F.2d 1126, 1131 & n. 7 (5th Cir.1988) (finding that the defendant voluntarily waived his right to remain silent); *Meeks v. Cabana*, 845 F.2d 1319, 1322–23 (5th Cir.1988) (state's determination that the defendant had waived his right to appeal); *Lavernia v. Lynaugh*, 845 F.2d 493, 499–500 (5th Cir.1988) (reliability of witness' testimony as to a pre-trial identification procedure was a question of fact, but whether the witness' identification testimony was constitutionally admissible was a mixed question of fact and law).

But the habeas statute does not require federal courts to presume that all factual findings by a state court are correct. Section 2254(d) provides a mechanism for dis-

regarding a state's factual findings if they are inherently untrustworthy. *See Sumner v. Mata*, 449 U.S. 539, 548–49, 101 S.Ct. 764, 769–70, 66 L.Ed.2d 722 (1981); *Smith v. Black*, 904 F.2d 950, 961 (5th Cir.1990). *But see Bouchillon v. Collins*, 907 F.2d 589, 592–94 & 593 n. 12 (5th Cir.1990) (refusing to apply section 2254(d) because state proceedings were deficient). I am uncertain why the majority explicitly circumvents this statutory mechanism. *See ante* at 1088 n. 7.

Neither this court nor the district court must presume that a state's determination of a factual issue is correct if "the factfinding procedure employed by the State court was not adequate." 28 U.S.C.A. § 2254(d)(2). The facts provided in the affidavits are based on the demeanor and credibility of Micheaux, something that the state court could not determine on the basis of the affidavits alone. Therefore, the district judge did not have to presume that those findings were correct; he was free to substitute his own findings, which were based on his personal observations of the witnesses. *See Cabana v. Bullock*, 474 U.S. 376, 388 n. 5, 106 S.Ct. 689, 698 n. 5, 88 L.Ed.2d 704 (1986), *partially overruled on other grounds, Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 1922 n. 7, 95 L.Ed.2d 439 (1987); *Buxton*, 879 F.2d at 146.

The magistrate found that Micheaux's goal in pleading guilty was to receive less than the forty years offered by the prosecutor. *Ante* at 1088 & n. 8. He accomplished that goal. Once the magistrate's conclusions are substituted for those of the state court, Micheaux's plea easily crosses the threshold of constitutionality. *See ante* at 1088–1090.

## II. ASSISTANCE OF COUNSEL

The district court did not make factual findings on Micheaux's ineffective assistance of counsel claim. The majority, how-

---

**2.** In *Miller*, the Supreme Court was faced with two conflicting lines of authority. On one hand, the line of cases interpreting section 2254(d) had restricted federal review to applying the relevant constitutional standard. *See Miller*, 474 U.S. at 118, 106 S.Ct. at 453–54

(Rehnquist, J., dissenting). On the other hand, cases decided by the Court on direct appeal had held that evaluating the voluntariness of a confession required an independent federal determination. *See id.* at 110–11, 106 S.Ct. at 449–50. The Court followed the latter *ratio decidendi*.

ever, addresses Micheaux's claim and dismisses it because Micheaux failed to prove that his defense was prejudiced under the test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See ante* at 1091.

Micheaux argues that his counsel was constitutionally deficient for two reasons. First, he contends that his attorney should have properly advised him (and the trial judge) of the minimum range of the sentence. If the four findings by the state court are presumed correct, Micheaux would have been prejudiced because one of those findings was that he would not have pled guilty had he known of the minimum range of the sentence. But after an evidentiary hearing, the district court concluded that Micheaux would have pled guilty to the charges even if he had been properly admonished.

My objection to the majority's treatment of this prong of Micheaux's ineffective assistance claim is identical to my objection regarding its treatment of the voluntariness of Micheaux's guilty plea. Like the majority, I would substitute the district court's findings for those of the state court, but I would do so because the fact-finding procedure used by the state was inadequate. *See* § 2254(d)(2). I would not do so by characterizing those findings as mixed questions of fact and law. *See ante* at 1090.

Micheaux's second contention is that his attorney failed to investigate the validity of the information used to increase Micheaux's minimum sentence from five to fifteen years. Micheaux pled "true" to the enhancement paragraphs, which stated that he had been convicted of a prior offense of using a stolen credit card. But he now states that this conviction was based on a defective information and, therefore, was void, and that if his attorney had properly advised him, he would not have pled "true," the enhancement paragraphs would have been dismissed, and Micheaux's sentencing would have been within the range he was advised.

The majority dismisses Micheaux's contention, *see ante* at 1091 n. 9, but its reasoning is needlessly ambiguous. After the

federal district court dismissed Micheaux's petition for habeas relief, Micheaux filed another habeas application in the state court and argued that his conviction was based on a defective information and was void. The state court specifically addressed this argument and concluded that the information was sufficient to support Micheaux's conviction. *See Ex Parte Micheaux,* No. C-2-1478-8748-B (Crim. Dist.Ct. February 22, 1989). This was a factual determination entitled to a presumption of correctness. *See* 28 U.S.C.A. § 2254(d).

Because the state decided that the information was valid, Micheaux could not have been prejudiced by his attorney's failure to investigate its validity. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Therefore, I concur in the majority's decision to dismiss the second portion of Micheaux's ineffective assistance claim.

### III.   CONCLUSION

I respectfully disagree with the analysis the majority uses to subjugate the state's findings to those of the district court, but I agree with the underlying tenet of the majority's opinion: the federal district court's findings are far more credible than those of the state court. Therefore, I concur in the decision to affirm the district court's refusal to deny Micheaux's habeas petition.