Carlos LAVERNIA,
Petitioner–Appellant,

v.

James A. LYNAUGH, Director, Texas Department of Corrections,
Respondent–Appellee.

No. 87–1918
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 5, 1988.

Carlos Lavernia, pro se.

Margaret Portman Griffey, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GEE, RUBIN, and SMITH, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A state prisoner convicted of aggravated rape seeks habeas corpus relief. We find that the district court did not err in rejecting the six claims the prisoner made.

## I.

Carlos Lavernia, a Cuban immigrant, was charged in September, 1984, with the rape of April Wooley in Austin, Texas, where Lavernia then resided, on June 2, 1983. Ms. Wooley had been jogging on a trail paralleling Barton Creek in Austin. She passed a Hispanic man who, she testified, gave her an unfriendly stare, and she decided to turn home. However, she met the same man on the way back, and he forced her off the trail and raped her.

The principal evidence against Lavernia was based on Ms. Wooley's identification of him as her assailant. After the assault, she had assisted a police artist in preparing a composite picture of the assailant, and over a period of fourteen months, she was shown three different photographic arrays.

On the first two of those occasions, she made no identification. In August 1984, however, she was shown a third set of photographs that included Lavernia's. She then identified him.

By that time, Lavernia was confined in the United States Immigration Detention Center in Atlanta, Georgia. He was extradited to Austin, where he was indicted for rape. He was represented by court-appointed counsel and, because he said he could not speak English, was assisted by a court-appointed interpreter. After trial by jury, he was convicted and sentenced to 99 years imprisonment.

The federal district court referred Lavernia's petition for habeas corpus to a magistrate, who filed a report and recommended that the petition be dismissed. The district court adopted the report. On appeal, Lavernia challenges the constitutionality of his conviction on several grounds, each of which we discuss separately.

## II.

Lavernia contends that the Texas state court tried him without the transfer order required by Texas law and therefore lacked jurisdiction. The charge against him was filed in the 331st Judicial District Court of Travis County, Texas, then transferred to the 146th District Court. The latter court then transferred the case to the 167th Judicial District Court, a court of concurrent jurisdiction, without a transfer order. Lavernia was then tried and convicted in the 167th District.

The state informs us, and Lavernia does not deny, that in Travis County all felony indictments are returned to the 331st District Court, then immediately apportioned among, and transferred to, one of the four district courts in Travis County. These mass transfers from the 331st District are not made a part of the individual records. The Texas Code of Criminal Procedure provides that when two or more courts have concurrent jurisdiction of a criminal offense, the court in which the indictment is

first filed retains jurisdiction.[1] In the absence of a transfer order, the court in which Lavernia was tried lacked jurisdiction.

 Lavernia argues that this result denied him due process of law and equal protection of the laws. Assuming, however, that the lack of a transfer order violated state law, this noncompliance did not constitute a denial of federal due process. Federal habeas courts are without authority to correct simple misapplications of state criminal law or procedure, but "may intervene only to correct wrongs of [federal] constitutional dimension."[2] The only inquiry incumbent upon a federal habeas court presented with an alleged violation of state criminal procedure is "whether there has been a constitutional infraction of the defendant's due process rights which would render the trial as a whole 'fundamentally unfair.'"[3] In order to establish that his trial was rendered fundamentally unfair, Lavernia must demonstrate that he was prejudiced by the omission of the order from the state court records.[4] Lavernia has not alleged, and we find nothing in the record to indicate, that the alleged omission could have had any impact on the outcome of his trial.

 We also reject Lavernia's contention that he was denied equal protection because in other cases transfer orders had been entered. The equal protection clause is violated only by intentional discrimination.[5] " 'Discriminatory purpose' ... implies more than intent as violation or as awareness of consequences," the Supreme Court stated in *Personnel Administrator of Massachusetts v. Feeney.*[6] "It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group," the Seventh Circuit added in *Shango v. Jurich.*[7] Lavernia neither alleged nor proffered any evidentiary basis on which the court might find that the state trial court intended to discriminate against him.

### III.

Lavernia contends that the following remarks by the prosecutor constituted an unconstitutional comment on his failure to testify:

> And we brought you every single thing that we have. And you have not heard that Mr. Lavernia does not speak English. In fact you have heard something quite to the contrary. He speaks enough English. Enough English to do what he needs to do. Where is his wife to get up here and tell you that she's known him for five or ten years, and he's never spoken to—

Thereupon, Lavernia's counsel objected and asked for a mistrial, and the court instructed the jury to take evidence "only from the witness stand."

 While the state contends that Lavernia's challenge is procedurally barred, we find that his argument, even if not foreclosed, lacks merit. A prosecutor's comment is improper if the prosecutor intended to refer to the defendant's silence or the remark was of such character that a jury would naturally and necessarily take it in that light.[8] To determine the intent of the prosecutor and the natural and necessary effect

1. Tex.Code Crim.Pro. art. 4.16 (Vernon's 1977).

2. *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982); *Reddix v. Thigpen,* 805 F.2d 506, 511 (5th Cir.1986); *Manning v. Warden, Louisiana State Penitentiary,* 786 F.2d 710, 711 (5th Cir.1986).

3. *Manning,* 786 F.2d at 711–12 (*citing Nelson v. Estelle,* 642 F.2d 903, 906 (5th Cir.1981)).

4. *Manning,* 786 F.2d at 712.

5. *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976).

6. 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979).

7. 681 F.2d 1091, 1104 (7th Cir.1982) (emphasis added) (*citing Feeney,* 442 U.S. at 279, 99 S.Ct. at 2296).

8. *Brock v. McCotter,* 781 F.2d 1152, 1159 (5th Cir.), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986); *Milton v. Procunier,* 744 F.2d 1091, 1095 (5th Cir.), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).

of the statements, we must examine the statements in the context in which they were made.[9]

■ The district court correctly concluded that the jury would not naturally and necessarily take the prosecutor's comments to refer to Lavernia's failure to testify. The prosecutor referred explicitly only to the fact that Lavernia's wife, not Lavernia, had failed to testify. Virtually anyone who knew Lavernia well, including his wife, could have been called to testify as to his ability or inability to speak English. For this reason, the prosecutor's remarks must be viewed as an acceptable comment upon the failure of the defense, not the defendant, to counter or explain the testimony presented or evidence introduced.[10] Nor would the jury "naturally and necessarily" interpret the prosecutor's claim that Lavernia knew "enough English to do what he needs to do" to refer to Lavernia's ability to testify and his failure to do so.

Moreover, the prosecutor made his comments in response to the assertions of Lavernia's counsel. In closing, Lavernia's counsel had argued that Lavernia did not speak English and that the victim's identification of Lavernia as the rapist had been erroneous because the rapist, according to her testimony, had spoken English. Counsel said:

> Now, let us talk, though, for a few moments about that particular identification and, again, her ability and position to come a year later and identify—or at a time later identify a defendant.

> First of all, she has got him speaking English on several occasions. "Why are you walking so fast?" "You know what I want?" "I want to see your titties," etc. This man [Lavernia] doesn't speak English. He doesn't speak English.

■ It is appropriate in summation for counsel "to assist the jury in analyzing, evaluating, and applying *the evidence.*"[11] An attorney may also urge the conclusions to be drawn from the evidence.[12] The argument of defense counsel was improper because it argued facts that were not in evidence. The only indications in the record that Lavernia did not speak English were that an interpreter was employed during the trial and that defense counsel asserted as much during cross-examination of the victim. Defense counsel cross-examined the victim as follows:

A. Are you aware that Carlos Lavernia speaks Spanish and does not speak English?

A. I'm aware that that's what he says.

The argument of which Lavernia complains did no more than correct the misrepresentations inherent in defense counsel's summation. The prosecution argued that the victim's testimony established that Lavernia spoke enough English to compel her compliance with various sex acts. The victim testified that she did not have a conversation with Lavernia and that his directives to her were limited to short directly sexual phrases. The prosecutor's remarks, viewed in context, were "invited" and did no more than respond substantially in order to "right the scale," and thus they do not warrant reversing the conviction.[13]

IV.

■ Without holding an evidentiary hearing, the district court rejected Lavernia's claim that his trial counsel had been ineffective in failing to call witnesses who would testify that he did not speak English, failing to obtain the results of a blood test and use this evidence, and failing to secure a ruling on the objection to the prosecutor's closing argument. To merit habeas relief

**9.** *Brock,* 781 F.2d at 1159.

**10.** *See United States v. Becker,* 569 F.2d 951, 965 (5th Cir.1978); *United States v. Dearden,* 546 F.2d 622, 625 (5th Cir.1977).

**11.** *United States v. Morris,* 568 F.2d 396, 401 (5th Cir.1978) (emphasis in original); *Ortega v. McCotter,* 808 F.2d 406, 410 (5th Cir.1987).

**12.** *Morris,* 568 F.2d at 401; *Ortega,* 808 F.2d at 410.

**13.** *United States v. Young,* 470 U.S. 1, 12–13, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1 (1985).

on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set out in *Strickland v. Washington.*[14] The petitioner must show both that (1) counsel's performance was deficient in that it fell below an objective standard of reasonable competence, and (2) the deficient performance so prejudiced the defense that the outcome of the trial was unreliable and there is a reasonable probability that, but for counsel's performance, the result of the trial would have been different. Unless a petitioner makes both showings, he is not entitled to relief.[15]

In determining whether counsel's performance satisfies the requirements of the Sixth Amendment, we inquire whether, considering all the circumstances, counsel's performance was reasonable under prevailing professional norms.[16] Judicial scrutiny of counsel's performance must be highly deferential; we must make "every effort ... to eliminate the distorting effects of hindsight and ... evaluate the conduct from counsel's perspective at the time."[17]

Both during his cross-examination of the victim and in closing argument, defense counsel represented that Lavernia was unable to speak English and must, therefore, have been incorrectly identified as the rapist, who the victim said spoke English. Lavernia asserts that counsel's performance in this regard was deficient because he failed to call as witnesses Lavernia's wife, Patricia, and another man, Pedro Morales, both of whom, he alleges, would have testified that he could not speak English. The record reflects that counsel pursued a reasonable strategy. The testimony of the two witnesses would have been merely cumulative to the implications arising from the use of an interpreter.[18] Moreover, Lavernia alleges no support for his assertion that these witnesses were available. In the pretrial hearing, Lavernia had stated that his wife had abandoned him because of the indictments against him. Counsel could have reasonably assumed that she would not testify favorably to Lavernia.

In addition, Lavernia has not established that he was prejudiced by counsel's failure to call these witnesses. The test for prejudice is whether there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.[19] As we have noted, the testimony of the witnesses would have been cumulative. The State, however, did not introduce evidence at trial that Lavernia spoke English fluently. Rather, the evidence showed that he knew a few phrases, "mostly bad words." Finally, the victim's identification of Lavernia was based on his appearance. The victim was emphatic and positive in identifying Lavernia as her assailant. The testimony of Lavernia's witnesses that Lavernia did not speak any English would not likely have been sufficient to overcome the State's evidence.

Lavernia's allegation that his trial counsel failed to obtain the results of a blood test and utilize the evidence is contradicted by the trial court record. His counsel filed a motion for discovery, which was granted, in which he requested the blood-test results. At trial, Patricia Hulin, a forensic serologist, testified that Lavernia's blood type was consistent with the blood type of the victim's assailant. Lavernia's trial counsel effectively cross-examined Hulin, eliciting the information that the laboratory results did not show that Lavernia was the assailant but showed only that he could not be eliminated as a suspect.

Lavernia also complains of his counsel's failure to secure a ruling from the court on his objection and motion for mistrial based on the prosecutor's closing argument. On this matter, however, he demonstrates neither deficient performance nor prejudice. The state appellate court determined that

14. 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

15. *Id.* at 687–97, 104 S.Ct. at 2064–69; *Thomas v. Lynaugh,* 812 F.2d 225 (5th Cir.1987).

16. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065.

17. *Id.* at 689, 104 S.Ct. at 2065; *Murray v. Maggio,* 736 F.2d 279, 281 (5th Cir.1984).

18. *See Murray,* 736 F.2d at 282.

19. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068.

the prosecutor's comments were not improper, and we have affirmed that conclusion. Counsel cannot be faulted for failing to pursue meritless motions.[20]

## V.

Lavernia asserts that the victim's in-court identification of him was tainted by impermissibly suggestive pretrial photo spreads. According to Lavernia, the police showed the victim three photographic lineups; they included his picture in the second lineup, but the victim failed to identify him; and the victim identified him only when shown his picture in a third photo lineup conducted more than a year after the crime occurred. Lavernia also alleges that the victim was shown a solitary picture of him after the third lineup and his arrest.

Pursuant to pretrial motions by defense counsel, the trial court conducted a suppression hearing before the victim testified concerning Lavernia's identity. The circumstances pertinent to the victim's viewing of the three photo spreads were fully developed, and both the second and third photo spreads were entered into evidence by the State for the purposes of the hearing. The State did not offer evidence that the victim identified Lavernia after viewing the third photo spread. However, the photo spreads were entered into evidence and displayed to the jury by defense counsel in an attempt to impeach the reliability of the victim's identification.

No testimony was developed either in the suppression hearing or during defense counsel's cross-examination of the victim that would support Lavernia's assertion that his photo was included in the second photo spread but was not identified by the victim. There is no evidence in the record to support his assertion that the victim was shown a solitary picture of him after his arrest. Indeed, the witness testified that she did not see any additional photos after the third lineup.

In determining whether a conviction must be reversed because the State employed improper pretrial identification procedures, the appropriate inquiry is whether the pretrial identification was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law.[21] We employ a two-part test in implementing this standard: first, whether the identification procedure was impermissibly suggestive; and second, if so, whether there was a substantial likelihood of misidentification.[22]

Lavernia has not alleged any factor that would have made the photo lineups impermissibly suggestive, nor is any apparent in the trial court record. At trial, defense counsel cross-examined the victim extensively as to whether she considered the notations on the photographs regarding height, weight, and age. While this allegation is not made here, the point of the cross-examination seemed to be that the notations rendered the photo lineup impermissibly suggestive because the victim was able to choose the photograph in the lineup for which the height, weight, and age of the individual pictured most closely matched the description she had given the police. The victim adamantly asserted that she had not considered the notations on the photographs until they were pointed out by the defense attorney. She said that she looked at the photographs and quickly identified her attacker: "[T]hat was the man, it was that easy. I'm absolutely positive."

█ In denying Lavernia's motions to suppress the in-court identification and the photo spread evidence, the trial court necessarily credited the victim's testimony that she did not consider the notations on the back of the photos and that the photos were of individuals of sufficiently similar appearance. Under the habeas corpus statute, 28 U.S.C. § 2254(d), the factual determinations of a state court, made after a

**20.** *Boag v. Raines,* 769 F.2d 1341, 1344 (9th Cir.1985), *cert. denied,* 474 U.S. 1085, 106 S.Ct. 860, 88 L.Ed.2d 899 (1986).

**21.** *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

**22.** *Preacher v. Estelle,* 626 F.2d 1222, 1223 (5th Cir.1980).

hearing on the merits of the issue, must be presumed to be correct unless the federal court explicitly finds that one of eight exceptions applies.[23] While the ultimate question whether the identification testimony is constitutionally admissible is a mixed question of law and fact that is not entitled to be presumed correct under 28 U.S.C. § 2254(d), the underlying determinations of historical fact that must be made in order to answer that mixed question are properly accorded a presumption of correctness.[24]

■ When, as is the case here, a trial court fails to render express findings on credibility but makes a ruling that depends upon an implicit determination that credits one witness's testimony as being truthful, or implicitly discredits another's, such determinations are entitled to the same presumption of correctness that they would have been accorded had they been made explicitly.[25]

■ Moreover, in this case there are sufficient indicia of the reliability of the victim's identification to satisfy the requirements of due process. "[R]eliability is the linchpin in determining the admissibility of identification testimony."[26] An identification is reliable if it is based upon observations of the individual independent from suspect pretrial identification procedures.[27] In determining whether an identification was reliable, a court should consider the totality of the circumstances, giving particular attention to the following factors:

1. the opportunity of the witness to view the criminal at the time of the crime,
2. the witness's degree of attention,
3. the accuracy of the witness's prior description of the criminal,
4. the level of certainty demonstrated by the witness at the time of confrontation, and
5. the length of time between the crime and confrontation.[28]

The only colorable argument offered by Lavernia in support of his claim that the identification was unreliable is the length of time between the crime and the photo lineup. The victim in this case had ample opportunity to view Lavernia as she jogged toward and passed him on the trail, as she approached him again on the return trip, and when Lavernia assaulted and raped her. It is clear from the circumstances under which the victim observed Lavernia that her attention was focused on him. Cross examination of her demonstrated that the description she gave the police of the assailant accurately fit Lavernia. Moreover, the victim could hardly have expressed more certainty with regard to her identification of Lavernia both in the photo lineup and in the courtroom.

While we are inclined to be doubtful of the accuracy of an identification made so long after the crime, in appraising the totality of the circumstances we think the identification had sufficient indicia of reliability to make the question of identity appropriate for determination by the jury.

## VI.

■ Lavernia also contends that the evidence was insufficient to identify him as the assailant. In reviewing a claim of insufficiency of the evidence, we inquire "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[29] Based on our dis-

**23.** *Sumner v. Mata,* 449 U.S. 539, 544–46, 101 S.Ct. 764, 767–69, 66 L.Ed.2d 722 (1981); *Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983).

**24.** *Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982).

**25.** *Marshall,* 459 U.S. at 433–34, 103 S.Ct. at 850.

**26.** *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

**27.** *United States v. Wade,* 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149 (1967); *Frisco v. Blackburn,* 782 F.2d 1353, 1355 (5th Cir.1986).

**28.** *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

**29.** *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

cussion of the identification evidence, we conclude that the evidence was sufficient to allow the jury to find beyond a reasonable doubt that Lavernia was the assailant.

## VII.

██ Finally, Lavernia requests an evidentiary hearing on his claims. To receive a federal evidentiary hearing, the habeas corpus petitioner must allege facts that, if proved, would entitle him to relief.[30] The court need not "blindly accept speculative and inconcrete claims" as the basis upon which to order a hearing.[31] Nor is a hearing required when the record is complete or the petitioner raises only legal claims that can be resolved without the taking of additional evidence.[32]

Each of Lavernia's claims could be resolved adequately by reference to the trial court record. The district court, therefore, correctly declined to conduct an evidentiary hearing.[33]

For these reasons, the judgment is AFFIRMED.

---

**30.** *Taylor v. Maggio,* 727 F.2d 341, 347 (5th Cir.), *certificate of probable cause denied,* 465 U.S. 1075, 104 S.Ct. 1432, 79 L.Ed.2d 755 (1984).

**31.** *Baldwin v. Blackburn,* 653 F.2d 942, 947 (5th Cir.1981), *cert. denied,* 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475 (1982).

**32.** *Williams v. Blackburn,* 649 F.2d 1019, 1021 (5th Cir.1981).

**33.** *Bridge v. Lynaugh,* 838 F.2d 770, 776 (5th Cir.1988).