Willie PETERS, Petitioner–Appellant,

v.

John P. WHITLEY, Warden, Louisiana State Penitentiary, et al., Respondents–Appellees.

No. 90–3296.

United States Court of Appeals, Fifth Circuit.

Sept. 24, 1991.

Virginia L. Schlueter, Asst. Federal Public Defender, John T. Mulvehill, Federal Public Defender, New Orleans, La., for petitioner-appellant.

Val M. Solino, Susan S. Kreston, Asst. Dist. Attys., New Orleans, La., for respondents-appellees.

Before Reynaldo G. GARZA, POLITZ, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The difficult question in this case is evaluating from a constitutional perspective the evidence, consisting almost entirely of the testimony of a severely mentally retarded young woman, which convicted the petitioner of simple rape. A careful review of the record convinces us that the state trial court did not render the prosecution fundamentally unfair by admitting the complainant's testimony. Because we also reject petitioner's other claims for relief, we affirm the denial of his application for writ of habeas corpus.

## I.

## BACKGROUND

Appellant Peters, a multiple offender, was sentenced to fifty years' imprisonment following his 1982 conviction for simple rape. At the time of the rape, the victim Ramona Washington was a twenty-nine year old obese, retarded woman with a mental age of either two to four or six to seven years old, and very limited communication skills.

On February 17, 1982, Peters talked with Barbara Blunt, Ramona's neighbor, for several hours on Blunt's porch. Peters was an acquaintance whom Blunt had not seen for several years. During their conversation, Ramona returned from school and joined Blunt and Peters on the porch. Blunt told Peters that Ramona was retarded, and Peters whispered to Ramona and held her hand. Ramona remained on the

porch with Blunt and Peters until her mother called her in for a bath. After the bath, Ramona went outside and disappeared. Ramona normally did not venture very far from the house. Eventually, Rickey Santiago, Ramona's brother-in-law, found her on a hill behind the house. Ramona had scratches on her knees, elbows, and lower back, and she was nervous and upset. Santiago discovered Ramona's underwear and sanitary napkin hanging on a nearby bush. Ramona was incapable of undressing herself, and because of her obesity and lack of coordination, she could not have climbed the hill without assistance. Santiago helped Ramona down the hill and took her to Blunt's house.

Upon returning to Blunt's house, Ramona became increasingly agitated. The police were summoned and Ramona, her mother, and Santiago were taken to the police station where Ramona identified Peters in a photographic line-up. At this line-up, the police officers asked Ramona to identify the man who had harmed her. Ramona clapped, laughed and cried hysterically, and pointed to Peters' photograph. Ramona reacted with similar high emotion when taken back to the scene of the crime. Based on Ramona's identification, the police obtained a warrant and arrested Peters.

That evening, Ramona was taken to the hospital for an examination. The emergency room doctor observed the scratches on Ramona's body but found no lacerations in her genital area. Although tests for the presence of seminal fluid and spermatozoa in Ramona's vagina were inconclusive, their probity was diminished because Ramona was menstruating at the time of the incident. Menstrual blood can wash away evidence of a sexual assault.

At trial, the officers who investigated the incident and conducted the photographic line-up testified along with Ramona, her mother, Blunt and Santiago. The judge allowed Ramona to testify and then examined her outside the presence of the jury to determine her competence. After the judge found Ramona competent, he put her under oath so that her previous testimony would be sworn. The jury returned a unanimous guilty verdict.

After exhausting state law remedies, Peters filed this petition for habeas corpus relief in the district court. The magistrate judge conducted an evidentiary hearing and recommended denying Peters' petition for habeas relief, a recommendation duly adopted by the district judge and supported by a thoughtful opinion. Peters has timely appealed.

## II.

## THE PHOTOGRAPHIC LINE–UP AND THE IN–COURT IDENTIFICATION

Peters first contends that the pre-arrest photographic line-up in which Ramona identified him was impermissibly suggestive, hence, the state trial court erred by admitting evidence of that line-up and identification. Peters also contends that Ramona failed to identify him in court as the perpetrator of an assault.

Whether identification testimony is constitutionally admissible is a mixed question of fact and law and is not entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Lavernia v. Lynaugh*, 845 F.2d 493, 500 (5th Cir.1988) (citations omitted). However, the factual findings underlying the determination of the admissibility of identification testimony are entitled to that presumption. *Id.* Pretrial identification procedures are constitutional unless "the pretrial identification was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law." *Id.* at 499 (citing *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967)). Thus, we consider first whether the identification procedure was impermissibly suggestive, and if so, whether there was a substantial likelihood of misidentification. *Id.* If the photographic line-up was not impermissibly suggestive, the inquiry ends. *United States v. Shaw*, 894 F.2d 689, 692 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 85, 112 L.Ed.2d 57 (1990).

■ Peters has not alleged any factors to establish that the photographic line-up was impermissibly suggestive, nor are any apparent from the record. Officers Trout and Cook testified that according to standard procedures, six photographs of men with the same general appearance as Peters were arranged in two rows of three, and Ramona was asked to choose the photo of the man who "hurt her." Ramona pointed to Peters' photograph, clapped her hands, laughed and cried hysterically, and said "That's Ronnie." [1] Ramona's mother and Rickey Santiago corroborated the officers' testimony. There is no evidence or even a suggestion that this photographic line-up procedure was impermissibly suggestive.

Peters also contends that Ramona failed to identify him in court as the man who harmed her. This is incorrect. The trial transcript reflects that Ramona did identify Peters in court by pointing to him and calling him "Ronnie," and she testified that he stuck "thing" in her (pointing to the vagina). Previously, she identified Peters from the photographic line-up as the man who hurt her.

### III.

### THE VICTIM'S COMPETENCE TO TESTIFY

Peters next asserts that the state trial court erred by admitting the testimony of an incompetent witness—the victim, Ramona Washington. Alternatively, he complains that the court should not have permitted Ramona to testify before placing her under oath.

1. Ramona refers to all men as "Ronnie."

2. In Louisiana, however, competence to testify is a question of law determined by the court. Hence, the trial court held a hearing on Ramona's competence outside the presence of the jury, and its decision was reviewed on appeal for abuse of discretion. *State v. Peters,* 441 So.2d 403 (La.App. 4th Cir.1983), *writ denied,* 530 So.2d 560 (La.1988). Under Louisiana law at the time of trial, La.Rev.Stat.Ann. § 15:469 (West 1981), the trial judge determined the competency of a mentally retarded person using the standard that is applied to children. *State v. Burleson,* 516 So.2d 1159, 1161 (La.App. 4th Cir.1987), *writ denied,* 521 So.2d 1168 (La.1988).

■ Treating the issue of Ramona's competence as one of fact, both parties discuss whether it is entitled to the presumption of correctness required by 28 U.S.C. § 2254(d). *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1981).[2] The correct habeas review standard, however, would seem to be that for the admission of evidence, in which a federal court reviews whether the state court's evidentiary ruling was sufficiently egregious to render the trial fundamentally unfair or violate an explicit constitutional right. *Edwards v. Butler,* 882 F.2d 160, 164 (5th Cir.1989), (citing *Dillard v. Blackburn,* 780 F.2d 509, 513 (5th Cir.1986)). Federal habeas courts may not review the mere admissibility of evidence under state law, because our responsibility is confined to errors of constitutional dimension. *See, e.g., Ball v. Wyrick,* 547 F.2d 78, 79 (8th Cir.1977). Further, federal courts are highly dependent upon state court findings of subsidiary facts pertinent to the challenged determination. *Miller v. Fenton,* 474 U.S. 104, 114–15, 106 S.Ct. 445, 451–52, 88 L.Ed.2d 405 (1985). Our role is properly fulfilled by examining not whether Ramona was a competent witness under state law, but whether her testimony was so grossly unreliable that, viewed in the context of the entire trial, it infected and fatally undermined the reliability of Willie Peters' conviction. This is the test applied by the magistrate judge and the district court after the magistrate judge conducted a federal evidentiary hearing on Ramona's competence.

■ Both the state trial record and that of the federal evidentiary hearing have been carefully reviewed, and both support

The trial judge's determination that a child is competent to testify is based not only on the child's answers to questions testing his understanding, but also on the child's overall demeanor on the witness stand. *State v. Armstrong,* 453 So.2d 1256, 1259 (La.App. 3rd Cir.), *writ denied,* 457 So.2d 16 (La.1984). Because the trial judge has the advantage of observing the child witness, his determination of competence is entitled to great deference and will not be disturbed in the absence of manifest error or an abuse of discretion. *See e.g., State v. Anderson,* 526 So.2d 499, 501 (La.App. 1st Cir.1988), *writ denied,* 537 So.2d 1160 (La.1989).

the admission of Ramona's testimony. The state trial judge questioned Ramona at length to determine whether she could distinguish between the truth and a lie and understood the consequences of lying. Although Ramona's answers were not always responsive, and her attention wandered easily, she indicated that she knew the difference between truth and falsehood, that she believed in God, that it was wrong to lie, and that she would be punished for lying. The federal evidentiary hearing did not yield evidence that seriously challenged Ramona's competence. Her personal psychiatrist testified to her mental age of 2 to 4 years and declared her unable to communicate except by grunts or grimaces. He only saw her infrequently, for short visits. Ramona's work history[3] and her testimony in the state trial, in which she used multiple-word phrases, cast doubt on the doctor's conclusions. Petitioners' other witnesses in the federal hearing were not particularly helpful to his challenge to Ramona's competence. While recognizing the difficulty of the state court's task in assessing Ramona's competence, we are persuaded that the judge discharged his duty conscientiously, and we are unable on the record before us to gainsay the admission of Ramona's testimony.

█ Peters also contends that the trial court erred by allowing Ramona to testify before she was sworn to tell the truth. As the district court found, this procedural detail did not embody fundamental error. Louisiana requires that "[e]very witness shall be sworn or affirm to speak the truth and nothing but the truth." La.Code Crim. Proc.Ann. art. 14(B) (West 1967) (amended 1989). Under Louisiana law, however, a formal oath is not always a prerequisite to receiving the testimony of children. *State v. Pace*, 301 So.2d 323, 325 (La.1974). The manner in which a witness "affirms to speak the truth" is left to the discretion of the trial judge. *Id.* No state law error was found here. *State v. Peters*, 441 So.2d at 408. Although the trial judge examined Ramona's competency after she testified, he asked Ramona if she had spoken the truth and she replied that she had. Ramona's responses to the judge's questions were sufficient to constitute an affirmation.

IV.

SUFFICIENCY OF THE EVIDENCE

Finally, Peters contends that the evidence presented at trial was insufficient to support his conviction for rape. Peters argues that there was no physical evidence linking him to the crime, that the medical evidence does not establish rape, and that the only evidence to support his conviction is the testimony of an incompetent witness.

█ In a habeas action alleging insufficient evidence, we review the evidence in the light most favorable to the government to determine whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Applying this standard to the evidence presented at trial, we conclude that the evidence is sufficient to sustain Peters' conviction.

Peters correctly argues that the physical evidence fails to establish that Ramona was raped. The examining physician testified that there was no evidence of forced sexual intercourse and that the tests to determine the presence of seminal fluid or spermatozoa were inconclusive. The testimony of Blunt, Santiago, and Ramona's mother are similarly inconclusive on the likelihood of rape. These witnesses merely established that Peters spoke with Ramona on Blunt's porch and that Ramona was found later that day, partially disrobed, in a place she could not have reached without assistance.

The crucial evidence to sustain Peters' conviction is thus Ramona's testimony. She readily identified Peters in the pre-arrest photographic line-up. Ramona clapped and pointed to Peters' photograph when the officers asked her to identify the man who harmed her. The officers testified that they needed a "translator" to

---

3. Ramona is able to organize strings of beads and pack them together, a task requiring comprehensive ability.

communicate with Ramona, but it was observed that her reactions to Peters' photo and to the scene of the alleged incident, when they brought her back there, were similarly agitated. In court, when the prosecutor asked Ramona who was with her on Blunt's porch, Ramona pointed to Peters and called him "Ronnie."

Identification alone does not, of course, prove sexual penetration. The only evidence of penetration is Ramona's testimony. Under Louisiana law, rape consists of any sexual penetration, no matter how slight. La.Rev.Stat.Ann. § 14:41 (West 1986). Ramona stated "[b]oy raped me," "[p]ut thing in me," and was "sticking me right in here" (pointing to her vagina) when she told him she wanted to go home. Although Ramona was competent to testify, that does not mean she understood the nature of sexual intercourse, so her use of the term "rape" is suspect. "There is a vast difference between understanding the distinction between the truth and a lie and understanding the nature and consequences of a sexual assault." *State v. Peters*, 441 So.2d 403, 409 (La.App. 4th Cir.1983), *writ denied*, 530 So.2d 560 (1988). Nevertheless, Ramona's testimony described some kind of sexual penetration. Having been found competent, Ramona's credibility in describing the incident and identifying Peters was left to the jury. Cases involving mentally retarded or very young witnesses require a particular blend of sophistication and sensitivity by all of the parties involved in the prosecution. These traits appear to have been exhibited in the record before us. We are unprepared to conclude that no rational jury could have found that the state established each element of simple rape beyond a reasonable doubt.

## V.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court denying Peters' petition for a writ of habeas corpus.