IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 02-50494

ROBERT DALE COX,

Petitioner-Appellee,

versus

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellant.

Appeal from the United States District Court
For the Western District of Texas

March 6, 2003

Before HIGGINBOTHAM and DAVIS, Circuit Judges, and HUDSPETH,[*]
District Judge.

PER CURIAM:[**]

A Texas jury found Robert Dale Cox guilty of felony theft of property valued over $750 and under $20,000 for stealing a 1940 John Deere H tractor from eighty-six year old Gertrude Klunkert. In July 1994, Klunkert agreed to pay Cox $1900 to build a carport. Cox offered to take the tractor as payment for his labor, but

---

[*] Senior District Judge of the Western District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Klunkert refused and stated that she would not sell it to him for any price due to its sentimental value to her. With the help of his brother-in-law, Cox stole the tractor.

At trial, Klunkert testified that she believed the tractor was worth $1500. The state also called an expert in antique tractors, Gustav Schlender. Schlender explained that antique tractors have two types of value, a "utility value" and a "collector-type value." Schlender testified that he had inspected the tractor and that in his opinion its fair market value as a collectible was at least $750, and could probably be sold at a price between $800 and $1000.

Cox called Maurice Hilbert, a John Deere dealer, to testify to the value of the tractor. Hilbert testified that the utility value of the tractor was $200 to $300 at the most. He admitted he did not know its value as an antique or collectible, but stated that "somebody who collects tractors for restoration might offer more for it." He also admitted that "I don't know what the antique market is. I don't follow the antique market ...." Cox did not call any expert regarding the tractor's collectible value.

The jury found Cox guilty of theft of property valued between $750 and $20,000. Because Cox had five prior felony convictions, he was sentenced to seventy-five years' imprisonment.

Cox moved for a new trial on the basis of new evidence and was granted a hearing. He called three experts to testify to the collectable value of the tractor, none of whom valued the tractor over $250. He also unsuccessfully attempted to enter into evidence

the affidavits of three other collectible tractor experts, none of whom valued the tractor over $350. After the hearing, the trial court denied Cox's motion.

Cox's conviction was affirmed on direct appeal. He then filed two state applications for writs of habeas corpus; the first application was denied without written order, and the second was dismissed for abuse of the writ. Cox filed his federal petition in February 2000. In it he urged that his trial attorney's failure to obtain expert testimony regarding the collectible value of the tractor constituted ineffective assistance of counsel, that he received ineffective assistance because his attorney did not request a jury instruction on his defense of "mistake of fact," and that his sentence amounted to cruel and unusual punishment. The magistrate judge to whom the case was assigned held an evidentiary hearing, and afterwards recommended that the district court deny his claims for relief on the mistake of fact and Eighth Amendment issues, but grant relief on the ineffectiveness claim based on failure to find a collectible value expert. In April 2002 the district court accepted the magistrate judge's report and recommendation and granted the writ, finding Cox's ineffective assistance of counsel claim meritorious. The Director appeals.

## I

The Director first argues that the district court erred in determining that Cox's ineffective assistance claim based on the

collectible value of the tractor was not procedurally defaulted. The district court accepted the magistrate judge's finding that Cox brought this claim in his first state court petition and that it was disposed of on the merits, thereby exhausting the claim and allowing the district court to consider it notwithstanding that Cox's second state habeas application was dismissed for abuse of the writ.[1] The Director disputes this conclusion, arguing that the ineffectiveness issue raised in the first state petition was substantially different from that pursued in the second state

---

[1] *See* TEX. CODE CRIM. P. ANN. Art. 11.071 § 5 (Vernon 2002). This section provides:

(a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

(3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071 or 37.0711.

*Id.*

-4-

application and federal petition.  We disagree.

In his first state petition, Cox presented a dual claim consisting of his argument that he was actually innocent of felony theft, because the tractor was worth less than $750, and that his counsel had rendered ineffective assistance by failing to investigate the tractor's collectible value and proffer such evidence at trial.  In discussing his ineffectiveness argument, Cox cited the basic law governing such claims, including *Cronic*[2] and *Strickland*.[3]  He explained that "[c]laims of ineffectiveness must overcome a strong presumption that counsel's representation was within the expansive range of reasonable performance, and demonstrate that the attorney's performance fell below prevailing professional norms."  Cox further noted that "*Strickland* also requires a showing that, but for counsel's errors or omissions, the result of the proceeding probably would have been different."

In particular, he urged that his counsel's failure to sufficiently investigate the collectible value of the tractor prejudiced him.  He explained that during the hearing on his motion for new trial, "three experts on antique tractors were presented, and they testified without contradiction[] that Klunkert's tractor was worth nowhere near $750."  He asserted, "[h]ad trial counsel investigated[,] he would have found more than enough tractor

---

[2] *United States v. Cronic*, 466 U.S. 648 (1984).

[3] *Strickland v. Washington*, 466 U.S. 668 (1984).

-5-

experts who were willing to testify regarding the worthlessness of Klunkert's tractor. Had he done so, it is more likely than not that the jury would have acquitted him."

Although Cox's ineffectiveness argument was intertwined with his actual innocence claim in his first state petition, it was fairly presented in that application, and therefore is not procedurally barred by the Texas Court of Criminal Appeals' dismissal of his second application for abuse of the writ.[4] The claim presented in his first state petition was nearly identical in all relevant aspects to that asserted in his second state petition,

---

[4] The Director argues that Cox argued ineffectiveness in an attempt to have the state courts consider his actual innocence claim, and that therefore he was not asking for relief due to ineffective assistance of counsel, but was rather asking for relief on the basis that he was actually innocent. However, the first state claim actually reveals the opposite – Cox's counsel was operating under the mistaken view that he needed to show his client was actually innocent in order to present the ineffectiveness claim. In the petition, his attorney asserted, "[i]f the habeas court is convinced that new facts exist raising doubt about the defendant's guilt, ... [this] 'threshold showing of innocence would justify a review of the merits of the constitutional claims.'" Thus, Cox's actual innocence argument was presented merely as "'a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'"

Unfortunately, Cox's attorney was applying the federal law applicable to *successive* habeas petitions in the context of Cox's first habeas petition. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995). His constitutional claim of ineffective assistance of counsel was not a "barred claim" in his initial habeas application, but would only have become barred if he failed to raise it in his first petition. *Id.* However, that Cox's attorney misapprehended the law was of no matter, because the actual innocence discussion was merely superfluous, and did not negate the presentation of his ineffectiveness claim.

-6-

which again cited *Cronic* and *Strickland* and summarized *Strickland's* two-pronged ineffectiveness test. Like his first state petition, the latter application also argued that his trial attorney fell below an objective standard of reasonable performance in failing to investigate and proffer at trial evidence on the collectible value of the tractor. Both his first and second state application ended its discussion of this claim with the charge, "[h]ad counsel properly investigated, he would have obtained the same overwhelming testimony presented at" the hearing on the motion for new trial, "which conclusively established that, even as a 'collectible,' the tractor was not worth anywhere near $750."[5] Cox therefore did not procedurally default on his ineffectiveness claim, which was rejected on the merits in his first state habeas petition.

## II

The Director also asserts that the magistrate judge erred in granting Cox an evidentiary hearing, because Cox failed to develop

---

[5] The Director contends that Cox's ineffectiveness allegations differed in his first and second state petitions, because in his first petition he only argued that his counsel failed to investigate the value of the tractor, while in his second state petition he asserted that his trial attorney failed to investigate the tractor's collectible value and *present such evidence at trial*. However, this argument splits hairs. In both applications, the gravamen of Cox's ineffectiveness argument is the same: his trial attorney failed to adequately investigate the collectible value of the tractor; had he done so, he could have presented substantial evidence that the tractor's antique value was under $750 and the jury would not have convicted Cox.

the factual basis for his claim in state court.[6]  "[A] petitioner cannot be said to have 'failed to develop' a factual basis for his claim unless the undeveloped record is a result of his own decision or omission."[7]  Thus, "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."[8]  Although the state court rejected Cox's request for a hearing, the Director argues that Cox must still be held accountable for failure to develop the record because he did not provide the state courts with affidavits supporting his allegations.  However, Cox sufficiently developed the record in state court by presenting the transcript of the hearing on his motion for new trial, which contained the testimony of three antique tractor experts that the tractor was not worth $750. Additionally, he submitted the affidavits of three other antique tractor experts who opined that the tractor was not worth $750.  He relied on both the transcript of the motion hearing and these affidavits to support his ineffectiveness allegations in his first state habeas petition.  We find that Cox's reference to this evidence in his first petition, coupled with his unsuccessful request for an evidentiary hearing, satisfied his obligation to

---

[6] *See* 28 U.S.C. § 2254(e)(2).

[7] *McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998).

[8] *(Michael) Williams v. Taylor*, 529 U.S. 420, 432 (2000).

develop the factual bases for his ineffectiveness claim.[9]

## III

The Director last argues that the district court erred in determining that Cox's trial counsel rendered ineffective assistance. Before reaching this issue, however, we must take up the question whether the district court applied the appropriate legal standard to any implicit findings of fact and conclusions of law made by the state courts.

AEDPA restricts the ability of federal courts to grant relief to those cases in which the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

---

[9] The Director complains that Cox proffered evidence at the federal hearing different from that provided in the affidavits and transcripts given to the state courts. During the hearing, Cox called his trial attorney, Stork, and an attorney expert, Forsythe, to testify on the ineffectiveness claim. He had not presented affidavits by these witnesses along with his first state petition. However, the district court determined before allowing the hearing that Cox did not fail to develop sufficiently his claim in state court, and we concur with that determination. Once the district court reached that conclusion, it was allowed to grant a hearing and expand the record of evidence at the evidentiary hearing. *See,* *e.g.*, Rule 7 of the Rules Governing § 2254 Cases ("If the petition is not dismissed summarily the judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition.").

proceeding."[10]  Claims of ineffective assistance of counsel are mixed questions of law and fact,[11] and a federal court may grant relief for such claims only if the state court's denial rested on "an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court," to the facts of the case.[12]

Furthermore, AEDPA "requires us to presume state court findings of fact to be correct unless the petitioner rebuts that presumption by clear and convincing evidence."[13]  This presumption of correctness applies not only to explicit factual findings, but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."[14]

Although the district court correctly applied the "unreasonable application" standard to the state court's denial of Cox's ineffectiveness claim, it refused to apply the presumption of correctness to any factual findings supporting this conclusion, because the state courts had made no explicit factual findings on the issue.  The magistrate judge's report and recommendation explains, "[g]iven that no evidentiary hearing was held, and no findings of fact were made by the trial court or the Court of

---

[10] 28 U.S.C. § 2254(d).

[11] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[12] *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir. 1997).

[13] *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); § 2254(e)(1).

[14] *Id.* at 948.

-10-

Criminal Appeals, there are no factual findings to which this Court must – indeed <u>can</u> – defer." Thus, the only factual findings it relied upon in its determination were those it made after holding an evidentiary hearing.

In so doing, the district court did not abide by the Supreme Court's instruction that, in habeas proceedings, "if no express findings of fact have been made by the state court, the District Court must initially determine whether the state court has impliedly found material facts."[15] This case presents particular circumstances that complicate a court's determination of whether the state courts made implicit factual findings, because neither the trial court nor the Texas Court of Criminal Appeals made any explicit legal conclusions, and Cox's first state petition was denied without written order.

In *Goodwin v. Johnson*, we reasoned that "[t]he case law of this circuit demonstrates that some indication of the legal basis for the state court's denial of relief on a federal claim is generally necessary to support a conclusion that the state court has made an implied fact-finding as to a factual issue underlying the claim."[16] However, it also noted, "[i]n a few instances, we

---

[15] *Townsend v. Sain*, 372 U.S. 293, 314 (1963); *see also Weeks v. Snyder*, 219 F.3d 245 (3d Cir. 2000) (same).

[16] *Goodwin v. Johnson*, 132 F.3d 162, 184 (5th Cir. 1998). Although this case applied pre-AEDPA law, its reasoning in regard to implied factual findings was adopted in the AEDPA context in *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (citing

-11-

have held that a state court's bare legal ruling without accompanying conclusions of law may form a basis for implying findings of fact that support the ruling."[17]  It limited these circumstances to those "in which the state court's ruling addressed a discrete issue and the factual basis for the ruling was extremely clear based on the ruling's limited nature."[18]  As examples, the *Goodwin* court cited cases in which we have held that a state court's refusal to dismiss a juror for cause after a defendant argued that the juror was partial gave rise to an implied factual finding that the juror was not biased,[19] that a trial court's denial of the defendant's motion to suppress evidence from an out-of-court identification implied that the court had credited the identifying witness's testimony that the out-of-court identification was not unduly suggestive,[20] and that the state court's denial of the defendant's motion for mistrial based on pretrial publicity contained the implicit fact-finding that the publicity had not

*Goodwin* in support of its statement that "[t]he presumption of correctness ... applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact" and describing *Goodwin* as holding that "findings of fact can be implied from explicit conclusions of law").

[17] *Id.* at 185 n.16.

[18] *Id.*

[19] *See Jones v. Butler*, 864 F.2d 348, 362 (5th Cir. 1988).

[20] *See Lavernia v. Lynaugh*, 845 F.2d 493, 499-500 (5th Cir. 1988).

created "the kind of 'wave of public passion' that would have made a fair trial unlikely."[21]

Although the district court here should have determined whether the state courts' denial of Cox's ineffectiveness claim entailed implicit factual findings, we conclude that its failure to do so was harmless in this instance because, under *Goodwin*, no such findings can be gleaned from their summary rejection of the claim. Cox's ineffectiveness claim differs from the discrete issues confronted in those few cases in which we have derived implicit factual findings from a state court's summary denial of a claim. In this instance, we cannot gather from the state courts' decision whether they denied the ineffectiveness claim because they found Cox's attorney sufficiently investigated the case, or because they found that any testimony proffered by the defense on the collectible value of the tractor would not have affected the jury verdict, or both. Therefore, this case does not fall within those limited cases in which "the factual basis for the ruling was extremely clear based on the ruling's limited nature." Because we find no error in the district court's refusal to apply the presumption of correctness to any implicit factual findings made by the state courts, we finally address the merits of Cox's ineffectiveness claim.

**IV**

---

[21] *See Wicker v. McCotter*, 783 F.2d 487, 495 (5th Cir. 1986).

-13-

## A

Ineffective assistance is a mixed question of law and fact, and we therefore review *de novo* the district court's grant of habeas, "while crediting the district court's express or implied findings of discrete historical fact that are not clearly erroneous."[22] The familiar tenets of *Strickland v. Washington* control and set out a two-pronged test to analyze whether a defendant received ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.[23]

To establish that counsel's performance was deficient, a defendant must show that it is objectively unreasonable under prevailing professional norms.[24] We apply a strong presumption that trial counsel's conduct fell within a wide range of reasonable professional assistance or that the challenged conduct might be

---

[22] *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002).

[23] 466 U.S. 668, 687 (1984).

[24] *Id*. at 688-89.

considered a trial strategy.[25] The defendant must also show prejudice, which requires demonstrating that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.[26] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[27]

After the magistrate judge conducted the evidentiary hearing, he made numerous factual findings. He found that Cox's trial counsel, Stork, admitted that the value of the tractor was "the issue at trial," but despite this knowledge never requested funds from the court to retain an expert on the tractor's collectible value. Additionally, he determined that the one expert Stork did call to speak on tractor valuation, Hilbert, was not qualified to offer an opinion on the value of the item as an antique, which was the theory Stork knew the prosecution planned on pursuing at trial.

The court also found that Stork had not written down the names of any other potential experts he had allegedly considered using. It determined that the numerous clubs of tractor enthusiasts and magazines devoted exclusively to antique tractors would have assisted Cox's counsel in locating an appropriately qualified expert. The court concluded that, had Stork attempted to engage an

---

[25] *Id*. at 689.

[26] *Id*. at 687.

[27] *Id.*

antique tractor expert, he would have had "a more than ample supply of experts to demonstrate that the value of the tractor, even for a collector, was well less than $750."

Applying the law to the facts, the magistrate judge concluded that Cox's attorney rendered deficient performance that prejudiced the defense. He reasoned:

> The evidence shows that [Cox's attorney] was on notice that the value of the tractor as a collectible was the crucial issue in Petitioner's trial. If Petitioner was convicted of theft of [over $750], he faced sentencing as a habitual offender, and was thereby exposed to a sentencing maximum of life imprisonment. [His counsel] likewise knew the expert he intended to present on the issue of value was not qualified to value the tractor as a collectible, yet he failed to take the steps necessary to secure such an expert. Had counsel done even a minimal amount of investigation into the collectible value issue, he would have obtained the same overwhelming testimony presented at the hearing on Petitioner's motion for new trial.

It determined that Stork's failures prejudiced Cox's case because "the jury sent out a note indicating it was deadlocked between a conviction for a misdemeanor and a felony, meaning they were having difficulty in determining whether the value of the tractor was more than $750." Given the closeness of the issue, and the wealth of testimony of the tractor's low collectible valuation presented by Cox in his post-conviction proceedings, the court concluded that there was a reasonable probability that, but for Cox's attorney's errors, the result of the proceeding would have been different.

**B**

-16-

The Director first attacks the district court's determination on the basis that trial counsel cannot be ineffective for failing to call a better expert. She argues that Hilbert, the witness called by Cox's counsel at trial, was "a knowledgeable tractor dealer," and asserts that defense attorneys are not required to shop around for experts who will provide better opinions.

However, we concur with the district court's analysis on this point. It reasoned that Cox's attorney "was not deficient for calling an expert who performed poorly," but rather "was deficient for not taking the steps necessary to locate and call an expert on the issue actually before the court and jury – the value of the tractor as a collectible item." The court compared the scenario to one in which "a defense attorney call[ed] a ballistics expert when the defense attorney knew that the prosecution was going to tie a gun to the defendant on the basis of fingerprints, not ballistics identification." This situation is not, as the Director urges, akin to one in which a defendant claims his expert did not prepare as thoroughly as would have been desirable,[28] or that his expert, although qualified, did not correctly diagnose his psychological

---

[28] *See Fisher v. Lee*, 215 F.3d 438, 449-452 (4th Cir. 2000) (rejecting the petitioner's complaint that his court-appointed medical expert began his evaluation of the petitioner too late to be sufficiently prepared to present effective testimony); *McQueen v. Scroggy*, 99 F.3d 1302, 1312 (6th Cir. 1996) (rejecting the petitioner's claim that his attorney was ineffective because he did not sufficiently prepare the psychiatric expert).

disorder.[29]  Rather, here the issue is not one of *degree* – whether Hilbert or another expert could have proffered better testimony as to the utility value of the tractor – but one of *kind* – whether Stork was deficient in failing to locate an expert on the collectible value of the tractor.  In this case, hiring Hilbert, who could speak only to the utility value of the tractor, was tantamount to hiring no expert at all.

## C

The Director also asserts that, contrary to the district court's finding, Cox's counsel did not render deficient performance.  She argues that his attorney conducted a reasonable investigation, "speaking to ten or twelve people total," and went to tractor dealerships and an antique flea market that displayed antique tractors.  She additionally asserts that Cox's attorney testified that he asked Hilbert for recommendations of other potential expert witnesses, but was given only the name of the prosecution's witness.  Finally, the Director contends that Cox's counsel "found people he thought he could qualify as experts, but they told him they did not want to get involved."  Thus, in his professional opinion he decided to call the utility valuation expert, rather than witnesses who could potentially be hostile to

---

[29] *See McQueen*, 99 F.3d at 1312-13 (rejecting the petitioner's argument that his counsel was ineffective because his psychiatric expert testified that the defendant had a sociopathic personality and became acclimated to heavy drinking and drug use); *Poyner v. Murray*, 964 F.2d 1404, 1419 (4th Cir. 1992).

-18-

his case.

Contrary to the Director's contentions, we, like the district court, are persuaded that the actions of Cox's counsel were objectively unreasonable. As noted by the magistrate judge in his recommendation, Stork was aware that the crucial issue in this case was the value of the tractor. If the state could prove that the tractor was worth $750, Cox faced a felony conviction and a possible life sentence; if not, Cox was facing only a few years for misdemeanor theft. Stork knew that the state intended to prove the value of the tractor as an antique or collectible. Stork also knew that his expert, Hilbert, by his own admission, was not qualified to testify as to the tractor's collectible value. Rather, Hilbert's area of expertise was in valuing tractors as functional pieces of farm equipment.

Stork apparently made some strides in locating experts to testify on the issue of collectible value, but he never hired one. Stork stopped by a flea market displaying an antique tractor and talked to several people who gave him helpful opinions regarding the value of these collectibles. He also recalled going to a tractor dealership and a tractor sale. However, the individuals he talked to expressed an unwillingness to get involved, and Stork made no attempt to persuade them to do so.

Stork did not subpoena any of these witnesses, though he admitted that they were neutral to Cox and had no reason to slant the truth. Stork also failed to file a motion for court approval

-19-

of funds for an appropriately qualified expert, which might have remedied these individuals' concerns that attending court would be time consuming or costly. During the evidentiary hearing, Andrew Forsythe, an "attorney performance expert," testified that Stork should have sought funds from the court. Forsythe opined that a reasonably effective attorney would have sought such funds, which could reduce a witness's reluctance to testify.

Cox provided further evidence that Stork could have located a qualified expert who was willing to testify had he moved for funds to hire one. Curtis Johnson, an antique tractor enthusiast, testified to the ease of finding such experts, and described the many clubs around the state for tractor enthusiasts, the magazines devoted to the hobby, and meetings and shows at which experts could have been found. Six favorable opinions of antique tractor experts were submitted by Cox demonstrating the facility with which such opinions could be obtained. In sum, the Director's contention that the actions of Cox's attorney were not unreasonable is unsupported by the record.

## D

The Director further argues that Cox was not prejudiced by his attorney's performance. The district court found that the jury's note indicated it was deadlocked on the felony versus misdemeanor issue. The Director downplays the importance of the note by

pointing out that the jury also requested the portion of the trial transcript in which Klunkert testified that Cox had been willing to accept the tractor in lieu of $1900, indicating that the jury based its felony determination on the amount at which Cox himself had valued the tractor.

However, in pursuing this argument the Director overlooks the all too likely possibility that, had Cox put on some evidence as to the collectible value of the tractor, it would have greatly diminished the jury's reliance on other, weaker indicia of the tractor's value, such as the arbitrary amount Cox was willing to forgo for it. *Strickland* requires that there be a reasonable probability that, but for Cox's attorney's errors, he would have prevailed at trial. This standard is met in this case. The complete absence of any evidence proffered by the defense on the most critical issue of the case – the collectible value of the tractor – rendered the proceeding "unreliable" such that it undermines confidence in the verdict.

**E**

Concluding, in our independent judgment, that Cox proved ineffective assistance does not alone resolve this matter, however. To uphold the district court's grant of habeas relief, we must also conclude that the state court's denial of Cox's petition "involved an unreasonable application of clearly established Federal law, as

determined by the Supreme Court of the United States."[30]  It is well-settled that the rule set forth in *Strickland* qualifies as "clearly established Federal law."[31]  Therefore, for Cox to prevail the state courts must have applied *Strickland* unreasonably.  As the Supreme Court has instructed, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[32]

The district court did not err in concluding that the state courts' application of *Strickland* to the facts presented was unreasonable.  As Cox's trial counsel conceded, and as is apparent from the record, whether Cox presented a collectible tractor expert was critical to his attempt to receive a misdemeanor instead of a felony conviction.  His attorney knew this, but despite this knowledge failed to make reasonable efforts to secure such an expert.  To find that this did not constitute ineffective assistance of counsel is not only incorrect, but unreasonable.

---

[30] 28 U.S.C. § 2254(d)(1).

[31] *(Terry) Williams v. Taylor*, 529 U.S. 362, 391 (2000).

[32] *Id.* at 413.  Although the magistrate judge acknowledged that Cox's claim should be analyzed under the "unreasonable application" prong of § 2254(d)(1), it incorrectly applied the standard applicable to the "contrary to" prong, which looks to whether the state courts decided the claim "differently than ... [the Supreme Court] has on a set of materially indistinguishable facts."

AFFIRMED.